For the reasons set forth above, the judgment of the District Court is hereby affirmed.

**Cordie CURRY, Plaintiff–Appellant,**

**v.**

**Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.**

**Docket No. 98–6267**

United States Court of Appeals, Second Circuit.

Argued: June 25, 1999

Decided: April 7, 2000

James M. Baker, New York, N.Y. (Kenneth Rosenfeld, Northern Manhattan Improvement Corporation, New York, NY, of counsel) for Plaintiff–Appellant.

Carolyn L. Miller, Assistant United States Attorney, New York, N.Y. (Zachary W. Carter, United States Attorney for the Eastern District of New York, Deborah B. Zwany, Kathleen A. Mahoney, Assistant United States Attorneys, New York, NY, of counsel) for Defendant–Appellee.

Before: CALABRESI and PARKER, Circuit Judges, and TRAGER, District Judge.*

PARKER, Circuit Judge:

Plaintiff–Appellant Cordie Curry appeals from the judgment of the United States District Court for the Eastern District of New York (Frederic Block, *Judge* )

entered September 25, 1998, granting judgment on the pleadings in favor of Defendant–Appellee Kenneth S. Apfel, Commissioner of Social Security ("Commissioner").

This appeal arises out of the Commissioner's denial of Curry's claim for disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, related to injuries sustained while working as a plumber in 1987. Subsequent to the Commissioner's initial denial and denial upon reconsideration, an administrative law judge ("ALJ") held a hearing and determined that Curry was not eligible for benefits. Pursuant to 42 U.S.C. § 405(g), Curry then filed this action in the United States District Court for the Eastern District of New York. The district court granted the Commissioner's motion for judgment on the pleadings and denied Curry's motion for judgment on the pleadings.

## I. BACKGROUND

At the time of the administrative hearing, Curry was a 44–year–old widower with a high school education, living alone and supported by public assistance. After working as an airline baggage handler and record store salesperson, Curry attended a plumber's trade school in the early 1980s and worked as a plumber from 1981 to October 9, 1990. Curry last worked in 1990 or 1991.

Curry avers that his disability began on October 9, 1990. Because Curry has received an award of disability benefits commencing June 17, 1995 in connection with an application filed on October 21, 1996, the disability period at issue here is October 9, 1990 through June 16, 1995 (the date of the ALJ's decision).

### A. *Medical Evidence*

While working as a plumber at St. Luke's Hospital ("St. Luke's"), Curry sus-

---

* The Honorable David G. Trager, District Judge for the Eastern District of New York, sitting by designation.

tained an injury to his back and right knee on September 30, 1987, when he jumped or fell from a ladder to avoid hot water flowing from a pipe. On October 6, 1987, Curry visited Dr. Frankel, who determined that Curry's knee was "ok," and on November 19, 1987, referred Curry to an orthopedic surgeon for lower back pain. The orthopedist, Paul Hobeika, M.D., reported that Curry's neurological exam was within normal limits, prescribed physical therapy for a lumbo-sacral sprain, and stated that Curry could return to work on November 25, 1987.

On December 22, 1987, Curry saw Dr. Kwon, who diagnosed chronic lumbar strain and recommended further diagnostic tests. On January 7, 1988, Dr. Cole conducted physical, electrodiagnostic, and electromyographic evaluations of Curry. He observed good, active lumbo-sacral range of motion with discomfort reported at the extremes of flexion and extension. Nerve studies were normal, although some mild irritation of the L5 and/or S1 area existed.

Curry received physical therapy from January 14 through June 28, 1988. During this time, Curry visited Dr. Hobeika twice, on February 4 and April 7, 1988. The doctor noted that Curry continued to complain of back pain.

On July 13, 1988, Dr. Hobeika operated on Curry's right knee and diagnosed internal derangement. Curry saw Dr. Hobeika for several follow-up visits, including a visit on June 5, 1989, when Curry complained of continuing pain in his lower back and pain "on and off" in his right knee. On April 4, 1990, Curry returned to Dr. Hobeika stating that he continued to experience pain in his right knee. Curry also informed Dr. Hobeika that he had not worked since February 2, 1990. Dr. Hobeika diagnosed arthritis in the right knee and placed Curry "off work" until April 6, 1990. Curry saw Dr. Hobeika again on August 30, October 11, October 29, November 8, and December 3, 1990. On this last visit, Dr.

Hobeika noted that Curry should change jobs.

On November 14, 1990 and January 14, 1991, Curry visited Arthur L. Matles, M.D., in relation to a worker's compensation claim. Matles diagnosed internal derangement of the right knee and stated on both visits that Curry could not return to work "at this time." On January 17, 1991, Curry saw Dr. Frankel, who noted that Curry had experienced back pain since 1987. Curry failed to keep three other scheduled appointments with Dr. Frankel.

Nothing in the record indicates that Curry received any medical care from January 17, 1991 until April 15, 1993, when Curry visited Peter Frazer, M.D., for left knee pain. Although an x-ray revealed no abnormalities of either the left or the right knee, Dr. Frazer diagnosed arthritis in the right knee. He prescribed a non-steroidal anti-inflammatory. On July 14, 1993, Curry saw Roy Brown, M.D., who wrote a letter "to whom it may concern," stating that Curry was being treated for bilateral synovitis of the knees and "is considered severely disabled."

In connection with his September 28, 1993 application for benefits, Curry underwent examination on January 27, 1994, by Mario Mancheno, M.D., a consulting physician to the Commissioner. Dr. Mancheno noted that Curry had tenderness and stiffness, but no swelling, in the right knee. The doctor also observed some tenderness in the lower back, but found no muscle spasm or deformity. Dr. Mancheno reported that an x-ray revealed mild degenerative joint disease in the right knee. Dr. Mancheno suggested that discogenic disorder of the lumbo-sacral spine be ruled out. As to impairment, Dr. Mancheno concluded that Curry had moderate impairment of lifting and carrying activities and mild impairment in standing and walking, pushing and pulling, and sitting.

In April 1994 Curry visited St. Luke's complaining of increased knee pain. He resumed physical therapy from May 19, 1994 through February 8, 1995. In Au-

gust 1994, Curry saw Gabriel Dugue, M.D., to have disability forms completed. The doctor diagnosed significant osteoarthritis in the right knee and moderate osteoarthritis in the left knee. Finally, Curry saw Dr. Hobeika again in February and on March 6, 1995. He had not seen Dr. Hobeika since December 1990. Dr. Hobeika completed a medical assessment form requested by Curry's counsel. Dr. Hobeika reported that Curry had osteoarthritis in both knees, which will not improve. He concluded that Curry could sit for two hours continuously, could stand for 30 minutes at a time, could walk for 15 minutes, and during an eight-hour day, could sit for no more than two or three hours, stand a total of one hour, and walk a total of 30 minutes. In addition, Dr. Hobeika stated that Curry could lift up to 20 lbs. occasionally and carry up to 10 lbs. occasionally. In a second medical assessment form, Dr. Hussapibis concurred with Dr. Hobeika's opinion.

## B. *Administrative Proceedings*

On September 28, 1993, Curry applied for disability benefits, stating that he had been unable to work since October 9, 1990. The Commissioner denied the application initially and again upon reconsideration. Curry then requested a hearing, which was held on March 9, 1995 before ALJ Mary E. Cerbone.

In an opinion dated June 16, 1995, the ALJ held that Curry was not under a disability as defined by the Social Security Act. The ALJ reviewed Curry's medical history and his testimony. The ALJ dismissed Curry's testimony relating to his work history as not credible due to "inconsistencies" and his testimony about pain and physical restrictions as "somewhat exaggerated and not supported by objective or clinical findings." Similarly, the ALJ rejected the functional limitations set forth in Dr. Hobeika's report, characterizing the limitations as "not supported by objective or clinical findings." Although the ALJ found that Curry had demonstrated that his impairments precluded him from returning to his past relevant work, the ALJ concluded that Curry "retains the residual functional capacity to perform the exertional requirements of at least sedentary work" and, in particular, that "the record does not establish that [Curry] is unable to sit for prolonged periods of time, lift and carry ten pounds and perform the minimal standing and walking required for sedentary work activity."

The Appeals Council denied review and, as a result, the ALJ's determination became the final judgment of the Commissioner.

## C. *District Court Proceedings*

On May 9, 1996, Curry filed a complaint in federal district court seeking review of the ALJ's ruling. Both parties moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). In granting the Commissioner's motion (and denying Curry's motion), the district court held that the Commissioner's decision was supported by substantial evidence. More specifically, the district court concluded that (1) the Commissioner articulated " 'good reasons' for declining to give controlling weight to" the opinion of Curry's treating physician, Dr. Hobeika, (2) "[t]he Commissioner's decision to accept [the opinion of its consulting physician,] Dr. Mancheno[ ], . . . over that of [Dr. Hobeika] was completely appropriate given the evidentiary support for such a decision in the record," and (3) the record contained substantial non-medical evidence, including Curry's own testimony, that was inconsistent with Dr. Hobeika's finding of disability.

## II. DISCUSSION

On appeal Curry asserts two principal grounds for reversal of the district court's affirmance of the ALJ's decision. First, Curry argues that the ALJ erred in rejecting the opinion of his treating physician on the ground that such opinion was not well-supported by medically acceptable clinical and laboratory techniques. Sec-

ond, Curry contends that even if the opinion of his treating physician is not entitled to controlling weight, the ALJ erred by failing to weigh that opinion against competing evidence as required by applicable regulations. Because we hold that the Commissioner failed to introduce sufficient evidence to satisfy his burden of proving that Curry could perform sedentary work, we do not address these arguments specifically.

### A. Standard of Review

When deciding an appeal from a denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion. *Schaal v. Apfel,* 134 F.3d 496, 500–01 (2d Cir.1998). Although "we undertake our own plenary review of the administrative record," "in examining the ALJ's decision, [i]t is not our function to determine *de novo* whether [Curry] is disabled." *Id.* at 501 (internal quotation marks omitted). "Rather, we must determine whether the Commissioner's conclusions 'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Id.* (quoting *Beauvoir v. Chater,* 104 F.3d 1432, 1433 (2d Cir.1997) (internal quotation marks and citation omitted)); *see* 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks and citation omitted)).

### B. The Merits of Curry's Disability Claim

The Social Security Act defines "disability" in relevant part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") has promulgated a five-step procedure for evaluating disability claims. *See* 20 C.F.R. § 404.1520. We have interpreted that procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" [that] significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment ... listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work [that] the claimant could perform.

*Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir.1999) (quoting *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (per curiam)). While

> [t]he burden is on the claimant to prove that he is disabled within the meaning of the [Social Security] Act[,] ... if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy [that] the claimant could perform.

*Balsamo v. Chater,* 142 F.3d 75, 80 (2d Cir.1998) (quoting *Carroll v. Secretary of Health and Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983) (citations omitted)); *see also Perez v. Chater,* 77 F.3d 41, 46 (2d

Cir.1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986) ("Once a disability claimant proves that his severe impairment prevents him from performing his past work, the [Commissioner] then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy.").

■ In the instant case, the ALJ found that Curry met his burden of proving that his impairment prevents him from performing his past work. Because substantial evidence in the record exists to support that conclusion and the Commissioner does not appeal it, we turn to the fifth step, i.e., whether the Commissioner proved that Curry can perform sedentary work.[1]

Although "[s]edentary work is the least rigorous of the five categories of work recognized by SSA regulations," *Schaal*, 134 F.3d at 501 n. 6, "[b]y its very nature 'sedentary' work requires a person to sit for long periods of time even though standing and walking are occasionally required," *Carroll*, 705 F.2d at 643. According to the SSA, sedentary work "generally involves up to *two hours of standing or walking* and *six hours of sitting* in an eight-hour work day." *Perez*, 77 F.3d at 46 (citing Social Security Ruling 83–10) (emphasis added). Sedentary work also involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §404.1567(a).

■ Having reviewed the record in the light most favorable to the Commissioner, we find that the Commissioner failed to carry his burden of meeting the foregoing standard. The only evidence supporting the ALJ's conclusion that Curry "retains the residual functional capacity to perform the exertional requirements of at least sedentary work," is Dr. Mancheno's opinion that Curry's "impairment is: [l]ifting and carrying moderate; standing and walking, pushing and pulling and sitting mild."[2] While the opinions of treating or consulting physicians need not be reduced to any particular formula, Dr. Mancheno's opinion is so vague as to render it useless in evaluating whether Curry can perform sedentary work. In particular, Dr. Mancheno's use of the terms "moderate" and "mild," without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that Curry can perform the exertional requirements of sedentary work.[3] *See Balsamo*, 142 F.3d at 81–82 (reversing denial of benefits on ground that Commissioner failed to introduce sufficient medical evidence that claimant could perform exertional requirements of sedentary work).

The inadequacy of Dr. Mancheno's opinion as a basis for the ALJ's decision to deny benefits to Curry is demonstrated

1. Although the law is well established that the burden of proof shifts to the Commissioner at the fifth step, the ALJ's conclusion that the "record does not establish that the claimant is unable to sit for prolonged periods of time" evinces a disregard for this procedure. Rather than requiring Curry to demonstrate that he cannot sit for extended periods, the law requires the Commissioner to prove that Curry can sit for the requisite number of hours each day.

2. In the ALJ's words, Dr. Mancheno opined that Curry was "able to lift and carry moder-ate weight, [and] stand, walk, push and pull or sit with only minor limitations." To the extent that inconsistencies exist between Dr. Mancheno's opinion and the ALJ's interpretation of that opinion, those inconsistencies are irrelevant to our analysis because either formulation of Dr. Mancheno's opinion, standing alone, is insufficient to support the ALJ's ultimate conclusion that Curry is not disabled.

3. Dr. Mancheno's lack of specificity contrasts sharply with the precise findings made by Curry's treating physician, Dr. Hobeika. *See supra* pp. 120–21.

further by the ALJ's implicit rejection of Dr. Mancheno's diagnosis. In her enumerated findings, the ALJ concludes that "[t]he medical evidence establishes that [Curry] has severe osteoarthritis of the right knee." In contrast, Dr. Mancheno's report includes a diagnosis of "mild" degenerative joint disease in the right knee. The ALJ does not reconcile this conflict, and we see no basis upon which the ALJ could reject Dr. Mancheno's diagnosis while simultaneously relying on his opinion concerning impairment.

In sum, Dr. Mancheno's opinion regarding impairment does not constitute substantial evidence in support of the ALJ's determination that Curry retains the functional capacity to perform the exertional requirements of sedentary work.

## C. *Disposition*

■ Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, we generally vacate and instruct the district court to remand the matter to the Commissioner for further consideration. *See Rosa,* 168 F.3d at 82–83 ("Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence.") (internal quotation marks omitted). Where, however,

> the reversal "is based solely on the [Commissioner's] failure to sustain [his] burden of adducing evidence of the claimant's capability of gainful employment and the [Commissioner's] finding that the claimant can engage in 'sedentary' work is not supported by substantial evidence, no purpose would be

served by our remanding the case for rehearing . . . ."

*Balsamo,* 142 F.3d at 82 (quoting *Carroll,* 705 F.2d at 644).[4] Because the Commissioner failed to introduce evidence sufficient to sustain his burden on the fifth step in the case *sub judice,* remand for the sole purpose of calculating an award of benefits is mandated. *Id.* (reversing and remanding for calculation of benefits where Commissioner failed to meet same burden). Moreover, we believe this disposition to be particularly appropriate given that Curry's application has been pending more than six years and that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay. *See id.* (noting that more than four years had elapsed between claimant's application and our decision).

## III. CONCLUSION

Because we hold that the Commissioner failed to introduce evidence sufficient to sustain his burden of proving that Curry could perform the exertional requirements of sedentary work, we reverse the decision of the district court and remand with instructions to remand the matter to the Commissioner for a calculation of disability benefits.

---

4. After reversal and remand of a social security disability case to a district court, the Commissioner is entitled to move pursuant to 42 U.S.C. § 405(g) for an order that additional evidence be taken in the administrative forum. To prevail on such motion, however, the Commissioner must demonstrate "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see Rosa,* 168 F.3d at 83 n. 8; *Balsamo,* 142 F.3d at 82.