**James R. JORDAN, Sr., Plaintiff–
Appellant,**

v.

**Jo Anne B. BARNHART, Commis-
sioner of Social Security, De-
fendant–Appellee.**

**Docket No. 01–6181.**

United States Court of Appeals,
Second Circuit.

March 22, 2002.

Alfred P. Kremer, Rochester, NY, for
Plaintiff–Appellant.

Barbara L. Spivak, Regional Chief
Counsel; Sixtina Fernandez, Assistant Re-
gional Counsel, on the brief, Office of the
General Counsel, Social Security Adminis-
tration, New York, NY, for Defendant–
Appellee.

Present CALABRESI, CABRANES,
Circuit Judges, and AMON,* District
Judge.

* The Honorable Carol Bagley Amon, United     of New York, sitting by designation.
States District Judge for the Eastern District

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Plaintiff–Appellant James R. Jordan, Sr. ("Jordan") appeals from an order and judgment of the United States District Court for the Western District of New York (Larimer, *C.J.*), upholding the decision of the Commissioner of Social Security (the "Commissioner") that Jordan was not entitled to disability benefits under the Social Security Act (the "Act"). Jordan suffered a back injury on October 16, 1991, while lifting a box at work. On February 2, 1993, Jordan filed his first application for disability benefits. The claim was denied, and no request for reconsideration was filed. Jordan filed a second application for benefits on November 5, 1993, which was denied both initially and on reconsideration. Plaintiff Appellant subsequently filed his current application for disability benefits on October 4, 1994. He alleged an inability to work, beginning on November 19, 1992, due to back pain, a heart murmur, asthma, and bronchitis. The claim was also denied initially and upon reconsideration.

Jordan appealed and, on January 24, 1996, a hearing was held before Administrative Law Judge ("ALJ") James E. Dombeck. The ALJ concluded that Jordan was not "disabled" within the meaning of the Act because the ALJ determined that, although Jordan was "unable to perform his past relevant work as a stockman, office cleaner, light industrial worker, and production supervisor," he nevertheless "retain[ed] the capacity to make an adjustment to work which exists in significant numbers in the national economy."

Plaintiff–Appellant requested a review by the Appeals Council, which was denied on December 17, 1997. Jordan then appealed to the United States District Court for the Western District of New York (Larimer, *J.*), which, on August 17, 1998, by stipulation, remanded the claim to the Commissioner for further administrative proceedings, including the presentation of such vocational expert evidence as might be appropriate. On January 7, 1999, the same ALJ held a second hearing and, on February 17, 1999, issued a decision denying Jordan's request for disability benefits. The Appeals Council again denied Jordan's request for review. Plaintiff–Appellant filed another appeal with the district court, which, this time, found that there was substantial evidence in the record to support the ALJ's determination that "the Commissioner has satisfied his burden of showing the existence of alternative substantial gainful employment which exists in the national economy and which [Jordan] can perform, given his ... physical and mental capabilities, age, education, experience, and training." On appeal to this Court, Jordan claims, as he did before the district court, (1) that the ALJ failed to give proper weight to the opinions of his treating physician, (2) that the ALJ erred in concluding that, despite Jordan's impairments, Jordan retained the residual functional capacity to perform the work-related activities of certain jobs in the local and national economy, (3) that the hypotheticals posed by the ALJ to the vocational expert were unsupported by the evidence in the record and unfairly created an inference of residual work capacity, and (4) that the ALJ committed error in discrediting Jordan's subjective complaints.

When deciding an appeal from a denial of disability benefits, "we focus on the administrative ruling rather than the district court's opinion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir.2000); *see Schaal v. Apfel*, 134 F.3d 496, 500–01 (2d Cir.1998).

While, in reviewing the district court's decision, "we undertake our own plenary review of the administrative record," *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996) (internal quotation marks and citation omitted); *see Curry*, 209 F.3d at 122; *Schaal*, 134 F.3d at 501, "[i]t is not our function to determine *de novo* whether [Jordan] is disabled." *Pratts*, 94 F.3d at 37; *see Curry*, 209 F.3d at 122; *Schaal*, 134 F.3d at 501. "Rather, we must determine whether the Commissioner's conclusions 'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Schaal*, 134 F.3d at 501 (citing *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir.1997)); *accord Curry*, 209 F.3d at 122; *see* 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Curry*, 209 F.3d at 122 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks and citation omitted)); *accord Schaal*, 134 F.3d at 501.

Applying the usual five-step process for evaluating disability claims, *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. § 416.920, the ALJ determined that Jordan was not performing substantial gainful activity and that his back pain, heart murmur, asthma, and bronchitis, when considered together, constituted severe impairments that precluded Jordan from performing his past relevant work as a stockman, office cleaner, light industrial worker, production supervisor, or self-employed grocer. Since Jordan's claim survived the first four steps of the inquiry, the burden shifted to the Commissioner to show that there is other gainful work in the national economy that Jordan could perform. *See Curry*, 209 F.3d at 122; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). The ALJ found, however, that the Commissioner had met that burden.

■ After reviewing the administrative record, we conclude that the ALJ's decision is supported by substantial evidence. The Regulations promulgated by the Social Security Administration provide that a treating physician's opinion will be given *controlling* weight if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999). And, the record plainly demonstrates that several physicians who examined Jordan, including Dr. Jeffrey Harp, Jordan's treating physician, provided functional capacity assessments that were consistent with a determination that Jordan could perform sedentary work of sorts available in the national economy.[1]

In March 1993, Dr. Harp stated that Jordan was able frequently to lift and/or carry ten pounds, stand and/or walk for up to two hours per day and sit for less than six hours per day. On several occasions in 1993, Dr. Harp reported that, while Jordan could not perform his previous work, Jordan "could reenter the workforce if his employment involved no strenuous use of his back." In a December 1993 report to the New York State Workers' Compensation Board, Dr. Harp indicated that Jordan could repetitively lift ten pounds, and occasionally lift twenty-five pounds. In January 1994, Dr. Harp opined that Jordan could occasionally lift and/or carry up to twenty pounds, stand or walk for up to two hours per day, and sit for up to six hours

---

1. "Sedentary work" is defined as work involving occasional standing and walking, lifting no more than ten pounds at a time, and occasional lifting and carrying of light objects. *See Schaal*, 134 F.3d at 501 n. 6 (citing 20 C.F.R. § 404.1567(a)).

per day with frequent breaks. In April of that year, Dr. Harp determined that Jordan could lift and/or carry twenty-five pounds occasionally, lift and/or carry ten pounds repetitively, stand and/or walk less than two hours per day and sit for less than six hours per day. And, in June 1994, Dr. Harp reported that Jordan was able to work four hours per day. Finally, in November 1998, seven weeks prior to the administrative hearing, Dr. Harp indicated that Jordan could lift ten pounds frequently and up to twenty pounds occasionally, sit for six hours, stand for two hours, and walk for one hour in an eight-hour workday.

Dr. Harp did note, however, that Jordan could never push or pull. And, he placed restrictions on Jordan's ability to climb, balance, stoop, crouch, kneel and crawl. Furthermore, Dr. Harp indicated that Jordan was to avoid heights, and could tolerate only moderate exposure to chemicals, dust, temperature extremes, and fumes. Other physicians who examined Jordan or reviewed his medical records provided similar assessments of Jordan's residual functional capacity.[2]

Based on the foregoing, we find that the ALJ's determination that Jordan retained the residual functional capacity to perform sedentary work is consistent with the assessments made by Jordan's treating physician. The ALJ did state that he gave "great weight" to Dr. Harp's opinion, but there is no evidence in the record that the ALJ accorded Dr. Harp's medical judgments anything less than controlling weight. Jordan argued below and continues to argue on appeal that the ALJ erred in failing to credit Dr. Harp's diagnoses over the years that Jordan was "partially or totally disabled."[3] Moreover, Dr. Harp, in an April 1994 letter to Jordan's attorney, did conclude that Jordan should be classified as "industrially totally disabled" rather than "permanently partially disabled" based on the assumption that Jordan could obtain work that involved minimal use of his back because Jordan could not in fact obtain such work.

We have held, however, that certain findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner, and a treating physician's statement that a claimant is disabled cannot itself be deter-

---

**2.** For instance, Dr. Anthony C. Borgese, in March 1993, determined that Jordan was able occasionally to lift twenty pounds, frequently lift ten pounds, stand and/or walk for about six hours in an eight-hour workday, and sit, with normal breaks, for about six hours in an eight-hour workday. In September 1993, Dr. David R. Cooper, a neurosurgeon, recommended that Jordan perform only light work (which is more strenuous than sedentary work) and imposed work restrictions that precluded Jordan from lifting, pushing or pulling more than twenty-five pounds. Dr. Janis Dale, a medical consultant for the Social Security Administration, reviewed Jordan's medical records in February 1994 and concluded that Jordan had the residual functional capacity to lift and/or carry ten pounds frequently, stand and/or walk for at least two hours, and sit for about six hours in an eight-hour day. In December 1994, Dr. A. Micale,

another state agency medical consultant, determined from a review of Jordan's medical records that Jordan could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours, and sit about six hours in an eight-hour workday.

**3.** In addition, Dr. Joseph V. McDonald, a neurosurgeon who examined Jordan in May 1993, found that Jordan had a "temporary marked disability." And, Dr. Robert S. Bakos, to whom Jordan was referred by Dr. Harp, determined, in September 1993, that Jordan had a "mild partial disability," but was capable of opening his own business. In September 1994, Dr. Jeffrey Mogelo, a neurologist who examined Jordan, noted that, following a limited examination due to Jordan's complaints of pain, Jordan seemed to have a "marked partial disability."

minative. *Snell,* 177 F.3d at 133; *see* 20 C.F.R. § 404.1527(e)(1). In particular, Dr. Harp's focus on whether Jordan could find work that he could perform is not the relevant consideration for purposes of assessing disability under the Act. The Commissioner's burden is simply to establish that a claimant with Plaintiff Appellant's attributes and impairments could engage in substantial gainful work that exists in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(c)(1).

In examining whether the Commissioner met this burden, the ALJ considered Jordan's residual functional capacity, age, education, transferable skills, and work experience. The ALJ also relied on the testimony of Julie Andrews, a vocational expert, who testified that Jordan could perform the work of a bookkeeper, an industrial order clerk, and a procurement clerk, all of which exist in significant numbers in the national economy. The ALJ acknowledged that the application of Rules 202.15 Table 2 of the Medical–Vocational Guidelines would only direct a finding of "not disabled," if the claimant had no other impairment. And he recognized that Jordan suffers from additional impairments—such as the need to change positions frequently, as often as every twenty to twenty-five minutes—that limit the range of work available. He still found, however, consistently with the medical reports (including those of Dr. Harp)

and the evidence of Jordan's respiratory difficulties, but discounting Jordan's own testimony regarding pain and work limitations (which the ALJ found not to be credible), that Jordan had the residual functional capacity to do the work that the vocational expert said was available.

■ Jordan contends that the ALJ erred in failing to credit Jordan's subjective complaints of pain. The ALJ found that Jordan's testimony at the hearing regarding the severity and disabling nature of his symptoms and functional limitations was largely inconsistent with the medical evidence,[4] his demeanor at the hearing, and his daily activities.[5] Under the Regulations promulgated by the Social Security Administration, if objective medical evidence is not sufficient to support a claimant's subjective allegations, the ALJ is required to consider various factors, including the claimant's daily activities, the frequency and intensity of pain, the type, dosage, effectiveness, and side effects of medication, and other treatment that relieves pain. *See* 20 C.F.R. § 416.929(c)(3). The ALJ specifically addressed these matters and, after reviewing the medical evidence in the record, was entitled to make a credibility determination regarding Jordan's allegations of disabling pain. *See Snell,* 177 F.3d at 135; *Dumas v. Schweiker,* 712 F.2d 1545, 1553 (2d Cir.1983).[6]

---

4. Jordan alleged, for instance, that he is required to nap three to five times per day for a period of fifteen to sixty minutes. The ALJ noted that "[t]here is no support to restrict [Jordan's] ability to work by this alleged limitation. There is no medical condition or medication side effect which would be expected to reasonably cause him to need to nap as he describes it."

5. The ALJ observed that, "[d]espite the claimant's alleged inability to tolerate sitting, he took a bus to the hearing from Buffalo, a distance of about 75 miles, and about a 90

minute bus ride. He also takes the bus from his home in Buffalo to Rochester to attend his doctor's appointments. At the hearing he stood up once during the 2 hour and 35 minute proceeding."

6. Jordan also challenges the form and content of two hypotheticals posed by the ALJ to the vocational expert. As the district court noted, Jordan, who was represented by counsel at the hearing, did not then object to the use or content of the hypotheticals. In any event, the answers to the hypotheticals, which may have strengthened the ALJ's conclusion that

We conclude that the ALJ's decision is supported by substantial evidence and, accordingly, AFFIRM the judgment of the district court.

Jordan was unable to perform his past relevant work, had little relevance to the ALJ's determination as to Jordan's residual functional capacity to engage in work available in the national economy. That finding depended not on answers to the hypotheticals, but on the medical reports combined with the ALJ's disbelief of Jordan's account of his pain and work limitations.