**Robert K. MONETTE, Plaintiff–Appellant,**

v.

**Michael J. ASTRUE, Commissioner of Social Security,[1] Defendant–Appellee.**

**No. 06–2510–cv.**

United States Court of Appeals, Second Circuit.

March 14, 2008.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Commissioner of Social Security Michael J. Astrue is automatically substituted for former Commissioner of Social Security Jo Anne B. Barnhart as the respondent in this case.

Kenneth R. Hiller, Amherst, NY, for Appellant.

Karen G. Fiszer (for Terrance P. Flynn, United States Attorney, Western District of New York), Special Assistant United States Attorney, United States Department of Justice, New York, NY, for Appellee.

Present: ROSEMARY S. POOLER, REENA RAGGI, Circuit Judges, PAUL A. CROTTY, District Judge.[2]

## SUMMARY ORDER

Robert Monette appeals the decision of the United States District Court of the Western District of New York (Skretny, J.) affirming an order of the Social Security Administration ("SSA") denying disability insurance benefits to Monette. We assume the parties' familiarity with the facts, proceedings below, and specification of appellate issues.

"In reviewing district court decisions in disability cases, we undertake our own plenary review of the administrative record to determine whether substantial evidence supports the Secretary's denial of benefits." *Havas v. Bowen,* 804 F.2d 783, 785 (2d Cir.1986); *see* 42 U.S.C. § 405(g). "Though we must credit an ALJ's findings if supported by substantial evidence, we retain a responsibility to conduct a searching inquiry and to scrutinize the entire record, having in mind that the Social Security Act ... is remedial in purpose." *McBrayer v. Secretary of Health,* 712 F.2d 795, 798–99 (2d Cir.1983). "[W]e may only set aside a determination which is based upon legal error or not supported by sub-

---

**2.** The Honorable Paul A. Crotty, United States District Judge for the Southern District of New York.

stantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam). Substantial evidence "means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (internal citations omitted).

The SSA has promulgated a five-step procedure for evaluating disability claims. *See* 20 C.F.R. § 404.1520. While "[t]he burden is on the claimant [at step four] to prove that he is disabled within the meaning of the [Social Security] Act[,] ... if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner at step five] to show there is other gainful work in the national economy [that] the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir.1998). We have long held that the Commissioner, at step five, has the burden to show, through the use of medical evidence, that the claimant has the residual functional capacity ("RFC") to perform gainful employment. *See id.* at 80 (reversing a determination by the Administrative Law Judge at step five, because "the Commissioner, who has the burden on the issue, failed to introduce any medical evidence that [the claimant] could hold a sedentary job"); *Curry v. Apfel*, 209 F.3d 117, 123 n. 1 (2d Cir.2000) ("Rather than requiring [the claimant] to demonstrate that he cannot sit for extended periods, the law requires the Commissioner to prove that [the claimant] can sit for the requisite number of hours each day").[3]

Under 42 U.S.C. § 423(c), Monette's disability insurance expired on June 30, 1997. Thus, Monette would be eligible to receive disability insurance benefits if, but only if, he can demonstrate disability, i.e., the inability to perform gainful employment, before June 30, 1997. Monette claimed that he has been disabled since August 7, 1996. The ALJ found that Monette has been unable to perform past relevant work since August 7, 1996, but that he did not become disabled until May 18, 2001, nearly four years after the expiration of his eligibility period for benefits. The question, therefore, is whether there is substantial evidence, sufficient to carry the Commissioner's burden, that Monette had an RFC that would enable him to perform gainful employment before June 30, 1997.

The Administrative Law Judge ("ALJ") found that from August 7, 1996, to about February 18, 2000, the claimant's RFC enabled him to, inter alia, sit and stand for up to two hours at a time and about six hours total, with normal breaks. The ALJ determined, based on this RFC and testimony from a vocational expert, that Monette was capable of doing a range of light and sedentary work during this period. Under *Balsamo* and *Curry*, the Commissioner bore the burden of showing that Monette had this RFC during the relevant period from August 7, 1996 to June 30, 1997. Although the question is close, we find that there was substantial evidence to support this finding.

---

**3.** At oral argument, counsel for the Commissioner argued that a subsequent amendment to the regulations abrogated *Balsamo* and *Curry* by placing the burden of proof to establish RFC on the claimant, even at step five. *See* Clarification of Rules Involving Residual Functional Capacity Assessments, 68 Fed.Reg. 51, 153–01 (Aug. 23, 2003). Because the Commissioner did not raise this argument prior to oral argument, we deem the argument waived. *See e.g., Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

In 1983, the Social Security Agency issued a policy statement "[t]o state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act." Social Security Ruling 83–20, 1983 WL 31249. The statement recognized that "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Id.* at \*2. In such cases, "it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id.* However, "[p]articularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established." *Id.*

"In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available." *Id.* at \*3. Similarly, "[t]he day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date." *Id.* at \*2. However, "the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence." *Id.* at \*1.

Although it is undisputed that Monette stopped working on August 7, 1996, and alleged that his disability began on that date, the ALJ found that the evidence did not support the onset of disability on that date. In circumstances where an ALJ has reason to question the onset date of disability, the best practice may be to solicit the views of a medical expert. *See id.* at 83 ("At the hearing, the administrative law judge should call on the services of a medi-

cal advisor when onset must be inferred."). Although we encourage ALJs in this practice, we nevertheless affirm the challenged denial in this case because substantial evidence supports the ALJ's onset finding.

In urging us to conclude otherwise, Monette points to the 2003 testimony of his treating physician, Dr. Huckell. An orthopedic surgeon who first treated Monette in 2000, Dr. Huckell thereafter conducted several consulting examinations and performed two major spinal surgeries and two investigative surgeries. In 2003, based on his experience with slowly progressing spinal injuries of the type Monette suffered, and based on his review of the record, including a 1998 MRI, Dr. Huckell concluded in a letter to the SSA that Monette lacked the RFC to "stand, sit or walk for more than a half-hour to an hour at a time. At the end of that period, he would have been required to lie down for approximately one-half hour due to pain.". This RFC, to the extent it could be applied retrospectively to the benefits eligibility period before June 30, 1997, would have indicated that Monette, contrary to the ALJ's finding, was incapable of performing sedentary work.

Monette argues that the ALJ was required to give controlling weight to Dr. Huckell's retrospective opinion under the treating physician rule described in 20 C.F.R. § 404.1527(d). *See Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir.2000) (discussing treating physician rule). This argument is unavailing because Dr. Huckell, who first saw Monette in 2000, was not a treating physician during the period in contention. *See Arnone v. Bowen,* 882 F.2d 34, 41 (2d Cir.1989) (finding that where the claimant's claim depended on showing continuous disability from 1977–1980, a doctor who treated him several times in 1974 and 1975, and once in 1987, was not a "treating physician" within the meaning of the rule, because "there simply was no ongoing phy-

sician-treatment relationship between" the claimant and the doctor during the relevant period and the doctor was therefore "not in a unique position to make a complete and accurate diagnosis") (internal quotations and citations omitted).

However, the fact that a treating physician did not have that status at the time referenced in a retrospective opinion does not mean that the opinion should not be given some, or even significant weight. Indeed, we have regularly afforded significant weight to such opinions. *See Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir.1981) (concluding that although the subsequent treating physician "did not treat the appellant during the relevant period before [the alleged onset date], his opinion is still entitled to significant weight."); *McBrayer,* 712 F.2d at 797. We identify no error in the ALJ's refusal to accord Dr. Huckell's retrospective opinion significant weight because there is substantial evidence that the opinion is contradicted by other evidence. *Cf. Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir.2004) (observing that opinion of treating physician not given controlling weight when contradicted by other substantial evidence in record).

The first evidence supporting the ALJ's conclusion was provided by chiropractor Kenneth Munroe, who first treated Monette on June 18, 1996, i.e., shortly before the disability eligibility period. During this first visit, Mr. Munroe noted that x-rays indicated subluxations in the lumbar spine. However, on this day, he favorably assessed Monette's functional capacities: "[W]ork restrictions [on] lifting and carrying of ten pounds up to 20 pounds, with no limitation on sitting, standing and walking, just avoid repetitive bending and twisting.". The ALJ relied on this assessment, correctly noting that these functional capacities would have allowed Monette to perform sedentary work. Although Mr. Munroe is a chiropractor, we have recognized that "the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him." *Diaz v. Shalala,* 59 F.3d 307, 313 n. 4 (2d Cir.1995) (noting that a chiropractor's opinion may be given "significant weight in appropriate circumstances"). Although Mr. Munroe's assessment on June 18, 1996 was issued six weeks before Monette's alleged onset date and more than a year before the expiration of Monette's disability insurance, the assessments are far more contemporaneous assessments of Monette's condition than Dr. Huckell's retrospective conclusion in 2003.

Not insignificantly, the medical records of doctors whom Monette did consult during his disability eligibility period, notably, those of Dr. Markowitz and Dr. Lifeso, fail to indicate that Monette possessed any lesser residual function capacity before June 30, 1997 than that referenced in the vocational expert's hypothetical. While both doctors identified conditions requiring continued treatment, and while Dr. Lifeso even raised the possibility of surgery, neither identified limitations precluding sedentary work. Indeed, Dr. Lifeso concluded that Monette could engage "in any occupation he wishes within his realm of comfort." While this statement plainly lacks detail or precision as to the then-scope of Monette's "realm of comfort," the ALJ could reasonably conclude that opinion belied the assertion that, before June 30, 1997, Monette's residual functions were so limited as to preclude the performance of even sedentary work.

Non-medical evidence also supports the ALJ's challenged finding. *See* 20 C.F.R. § 404.1545(e) (providing for consideration of "all of the medical and nonmedical evidence" in "assessing the limiting effect" of an impairment). As the ALJ noted, Monette refrained from taking any pain medi-

cation before June 30, 1997. *See id.* § 404.1529(c)(3)(iv) (providing that ALJ may consider whether claimant took medication to alleviate pain in assessing disability); *but cf.* Social Security Ruling 96–7P, 1996 WL 374186 at *8 ("Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by … trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects [such as chiropractic care] … lend support to an individual's allegations of intense and persistent symptoms"). Further, he engaged in, or attempted to engage in, a range of physical activity, from tending cows in 1998, to occasionally hunting (though "not as much" as previously) in 2001.

From the totality of this medical and non-medical evidence, we conclude that there is substantial record support for the ALJ's finding that before June 30, 1997, Monette retained the residual functional capacity to perform sedentary work.

We therefore affirm the judgment of the District Court. Because we have completed our review, all pending motions are denied as moot.

