**Deborah GIDDINGS, Plaintiff–Appellant,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant–Appellee.**

No. 08–1108–cv.

United States Court of Appeals, Second Circuit.

June 26, 2009.

Mark Schneider, Plattsburgh, NY, for Plaintiff–Appellant.

Margaret A. Donaghy, Special Assistant United States Attorney (Barbara L. Spivak, of counsel) for Glenn T. Suddaby, United States Attorney for the Northern District of New York, for Defendant–Appellee.

PRESENT: Hon. JOSEPH M. McLAUGHLIN, Hon. GUIDO CALABRESI, and Hon. DEBRA ANN LIVINGSTON, Circuit Judges.

## SUMMARY ORDER

Plaintiff–Appellant Deborah H. Giddings ("Giddings") appeals from the March 3, 2008 decision and order of the District Court for the Northern District of New York (Peebles, M.J.)[1] that affirmed Administrative Law Judge Zolezzi's ("ALJ Zolezzi") decision affirming a determination by the Commissioner of Social Security ("Commissioner") that Giddings was not entitled to Social Security Disability Insurance from April 7, 2000 through May 1, 2002. On appeal to this Court, Giddings argues, *inter alia,* that the Residual Functional Capacity ("RFC") determination made by ALJ Zolezzi, i.e., that she could "perform work at a light level of exertion" with certain accommodations, A.R. 549, is not supported by substantial evidence. We agree. Our analysis assumes the parties' familiarity with the underlying facts, procedural history, and the issues for review.

■ We recently set forth the applicable standard of review:

When a district court has reviewed a determination of the Commissioner, "[w]e review the administrative record de novo to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel,* 276 F.3d 103, 108 (2d Cir.2002). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

*Poupore v. Astrue,* 566 F.3d 303, 305 (2d Cir.2009) (per curiam). "We undertake a plenary review of the administrative record, and our focus is on the administrative ruling more than on the district court's decision." *Lamay v. Comm'r of Soc. Sec.,* 562 F.3d 503, 507 (2d Cir.2009).

At the outset, the parties dispute whether Giddings or the Commissioner has the

---

1. The parties agreed that Magistrate Judge David E. Peebles would have jurisdiction over all aspects of the case.

burden of proof as to Giddings's RFC at the fifth step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520(a) ("This section explains the five-step sequential evaluation process we use to decide whether you are disabled.... At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work."). Giddings argues that the standard set forth in *Curry v. Apfel,* 209 F.3d 117, 122–23 (2d Cir.2000)—under which, at the fifth step, the burden shifts to the Commissioner—applies to her application for benefits. The Commissioner contends that the 2003 revised regulation—under which the burden of proving RFC remains with the applicant at the fifth step—is applicable. *See* 20 C.F.R. § 404.1560(c)(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work."). Even though Giddings's application for benefits, dated June 8, 2000, was filed before the effective date of the amended regulation, the Commissioner argues that the amended version of 20 C.F.R. § 404.1560(c)(2) applies retroactively. We need not resolve this dispute, however. We find that, even if Giddings retains the burden of proof at the fifth step of the sequential analysis, ALJ Zolezzi's RFC determination was not supported by substantial evidence.[2]

■ ALJ Zolezzi found that Giddings's RFC was a restricted range of light work. A.R. 549, 551. The Commissioner's regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). More specifically, ALJ Zolezzi found that Giddings had the RFC to "perform work at a light level of exertion; with the ability to change positions as needed using a sit/stand option every 30 minutes for sitting, and every 15 to 20 minutes for standing or walking," among other restrictions. A.R. 549. We note that this determination is contradicted by the previous RFC determination by ALJ Gibbons, who found that, prior to May 1, 2002, Giddings's RFC was limited to *sedentary* work. *Id.* 267. Thus, without referencing ALJ Gibbons's prior RFC determination, ALJ Zolezzi found that Giddings's RFC was *greater* than ALJ Gibbons had previously determined.

ALJ Zolezzi's RFC determination, i.e., that Giddings retained the capacity to perform a restricted range of light work, also flatly contradicts the medical opinion of Dr. Hargraves, a neurosurgeon who conducted an examination of Giddings on May 31, 2000. Dr. Hargraves diagnosed her with "Degenerative disc disease." *Id.* 214. He noted symptoms of lower back pain, burning in the lower back and left leg, and

---

**2.** ALJ Zolezzi's decision did not address whether Giddings or the Commissioner had the burden of proof with respect to RFC at the fifth step of the sequential analysis. *See* A.R. 549.

numbness in the left leg. *Id.* He indicated that she could lift or carry a maximum of 20 pounds, and that her ability to stand and/or walk and sit was limited—though he did not specify how limited—and required unspecified "rest periods." *Id.* 216. He recommended "conservative therapy for now." *Id.* 215. At the time, Dr. Hargraves did not further specify the extent of these limitations. On December 12, 2003, however, ALJ Gibbons requested that Dr. Hargraves clarify the extent of the limitations on Giddings's ability to sit, stand, and walk. *Id.* 529. Dr. Hargraves responded that, at least with respect to the period when he examined her, Giddings could stand or walk less than one hour in an eight-hour work day, and sit less than two hours in an eight-hour work day. *Id.* 531. These restrictions are inconsistent with ALJ Zolezzi's RFC determination.

■■■■ We recognize, of course, that Dr. Hargraves only examined Giddings once, and is not entitled to the deference of a treating physician. *See Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir.2008) ("With respect to 'the nature and severity of [a claimant's] impairment(s),' 20 C.F.R. § 404.1527(d)(2), the SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." (internal quotation marks omitted)). We also acknowledge that generally, "in evaluating a claimant's disability, a consulting physician's opinions or report should be given little weight." *Cruz v. Sullivan,* 912 F.2d 8, 13 (2d Cir.1990). At the same time, ALJ Zolezzi did not refer to *any* medical opinion that contradicted the medical opinion of Dr. Hargraves as to Giddings's ability to sit, stand, or walk during the work day. And we have indicated that, when a medical opinion stands uncontradicted, "[a] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome" it. *Burgess,*

537 F.3d at 129 (internal quotation marks omitted); *see McBrayer v. Sec. of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir.1983) (stating that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion" and that "[w]hile an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him" (citation and internal quotation marks omitted)); *see also Robinson v. Barnhart,* 366 F.3d 1078, 1082 (10th Cir.2004) (per curiam) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided" in the Commissioner's regulations.) (internal quotation marks omitted); *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995) ("As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician.").

Here, Dr. Hargraves's opinion is the *only* medical opinion referenced by ALJ Zolezzi that explicitly addresses the effect of Giddings's impairments on her ability to work. ALJ Zolezzi recognized that "the record does contain an assessment of the claimant's ability to meet the exertional demands of work," i.e., Dr. Hargraves's opinion. A.R. 547. However, ALJ Zolezzi reasoned that Dr. Hargraves's opinion, "based upon a single examination, is not well supported by medical evidence, and is inconsistent with the claimant's reports of her daily activities." *Id.* 547. We find that ALJ Zolezzi failed to provide the compelling critique needed to overcome the uncontradicted medical opinion of Dr. Hargraves. *See Burgess,* 537 F.3d at 129; *McBrayer,* 712 F.2d at 799.

ALJ Zolezzi provided no explanation for the assertion that Dr. Hargraves's opinion was "not well supported by medical evidence." *Id.* While the report is admittedly cursory, it does provide a basis for Dr. Hargraves's exertional limitation findings, namely, Giddings's symptoms of pain, burning and numbness in her lower back and leg, as well as an MRI indicating degenerative disk disease. A.R. 214–18; *see* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and *laboratory findings*, the more weight we will give that opinion." (emphasis added)).

More importantly, the other medical reports analyzed by ALJ Zolezzi do not address, much less undercut, the exertional limitations indicated by Dr. Hargraves. ALJ Zolezzi stated that the May 23, 2001 examination by Dr. Penar, a neurosurgeon, "revealed normal motor exam, neurologic exam, normal bulk and tone, and negative straight leg raising bilaterally," and that Giddings's "radicular symptoms were of unclear dermatomal distribution." A.R. 547. But it is not clear why these findings are a basis to reject the exertional limitations indicated by Dr. Hargraves. Indeed, there is evidence in Dr. Penar's report confirming Dr. Hargraves's diagnosis. Moreover, Dr. Penar's report does not specifically address Giddings's exertional limitations. *McBrayer,* 712 F.2d at 799. Since Dr. Penar's report says nothing about how the various findings noted by ALJ Zolezzi relate to Giddings's exertional limitations, Dr. Penar's opinion is not a sufficient basis for ALJ Zolezzi to have disregarded Dr. Hargraves's opinion.

So too with Dr. Monsey's opinions of June 25, 2001 and October 1, 2002. The ALJ noted that Dr. Monsey, a neurologist,

"advised conservative therapy" and "was reluctant to perform surgery without diagnostic discography, and when discography was performed, it failed to reveal a surgically correctable lesion." A.R. 547. However, like Dr. Penar, Dr. Monsey did not opine on Giddings's exertional limitations.

Finally, ALJ Zolezzi noted that Giddings "completed her series of pain management injections on December 18, 2001 and reported good response to the bilateral radio frequency ablation performed on December 7, 2001." A.R. 547. Again, this is not an adequate basis to reject the exertional limitations indicated by Dr. Hargraves. Moreover, the December 18, 2001 report by Dr. Bordello indicates that, after the December 7, 2001 treatment, "the patient subsequently has experienced recurrence of severe right lower back axial low back pain." *Id.* 419.

ALJ Zolezzi's finding that the exertional limitations stated by Dr. Hargraves are "inconsistent with the claimant's reports of her daily activities," *Id.* 547, is also not supported by substantial evidence. ALJ Zolezzi found Giddings to be "for the most part credible," although he attached greater weight to "allegations [Giddings] made closer to the time frame at issue in the claim, rather than her current recollections." *Id.* 548. As the Appeals Council observed, Giddings "testified that she is unable to sit for more than one-half hour at a time, walk for more than five minutes at a time or stand for more than fifteen minutes at a time."[3] *Id.* 558. Giddings also testified that she could not work *continuously* by alternating between sitting and standing. When asked at the 2001 administrative hearing if she could do a job where she could "sit for like half an hour at a time and then stand for half an

---

**3.** For example, Giddings testified that she could only stand in one place for fifteen minutes, e.g., if she were at a grocery store line, and that it takes her two hours to do the dishes because she has to repeatedly stop and move around. A.R. 57, 60.

hour at a time," Giddings answered "Not for very long at a time," and again, "Probably not." *Id.* 56.

Furthermore, Giddings has consistently testified as to her need to lie down to obtain pain relief. At the 2001 administrative hearing, Giddings testified that her lower back pain is "always there," though at times "it feels like a dull ache," and that to relieve the pain she takes medication and "lay[s] down or relax[es], whichever position [she] can get comfortable in until the pills take effect." *Id.* 43–44. At the 2004 administrative hearing, she testified that when she stopped working in May 2000, she could do "[light housekeeping] [f]or 20 minutes, a half hour tops," and then she would "have to either sit down or lay down again for about another half hour or an hour." *Id.* 289. Giddings reiterated this point at the 2005 hearing before ALJ Zolezzi. She stated that after standing or walking for fifteen to twenty minutes, she would have to lie down—not even sitting would relieve the pain. *Id.* 659–60. She further testified that she would have to lie down for half an hour to an hour before she could resume standing or walking again. *Id.* 660. Additionally, after playing computer games for a half an hour, she would "have to get up and move around, lay down ... [because she was] sore." *Id.* 666. This testimony is corroborated by Dr. Bordello's June 25, 2001 report, stating that "[b]ack pain is worsened particularly by sitting, standing and lifting, is improved by *recumbency* with her knees flexed and constantly changing positions." *Id.* 429 (emphasis added).

These portions of Giddings's testimony—as to her inability to work continuously, even while changing positions, and her need to lie down to relieve her pain—are consistent with, if not supportive of, Dr. Hargraves's assessment of Giddings's exertional limitations. It is not clear what aspect of Giddings's "reports of her daily activities," *Id.* 547, as described in ALJ Zolezzi's analysis, *see id.* 547–48, warranted discrediting Dr. Hargraves's medical opinion. Indeed, during Giddings's 2001 hearing testimony, to which ALJ Zolezzi gave "greater weight," *id.* 548, Giddings described her lifestyle as quite sedentary. When asked what she does during the day, Giddings responded:

> Not much. Lay down and rest, walk around, walk to the mailbox and back. That's about it, basically. I lay down and sit down for a few minutes at a time. Get up. I do cook my own meals and stuff. My daughter comes over and does all the housework, and washing, and stuff for me, so I haven't got to do that.... I've got to keep stopping and moving.

*Id.* 57. She testified that sometimes she does not leave the house, and when she does, it is for grocery shopping or to go to the doctor's office. *Id.* Additionally, when she is sitting or walking around her home, she watches TV, listens to the radio, or plays computer games. *Id.* 58.

Furthermore, even assuming *arguendo* that Giddings's testimony were inconsistent with Dr. Hargraves's opinion of her exertional limitations, her testimony still does not provide substantial evidence for ALJ Zolezzi's RFC determination—which does not account for, or address, her statements regarding her inability to continuously change positions or her need to lie down.

To summarize, we find that ALJ Zolezzi's RFC determination, i.e., a restricted range of light work "with the ability to change positions as needed using a sit/stand option every 30 minutes for sitting, and every 15 to 20 minutes for standing or walking," *id.* 549, is not supported by substantial evidence because: (1) the RFC cannot be squared with Dr. Hargraves's medical opinion; (2) ALJ Zolezzi's analysis

of other medical opinions did not contradict or undercut Dr. Hargraves's medical opinion; and (3) ALJ Zolezzi did not adequately explain why Giddings's testimony—including her testimony before ALJ Zolezzi, which he found to be "for the most part credible," and her earlier testimony in the 2001 hearing and her disability application, to which he afforded "greater weight," *id.* 548—is inconsistent with Dr. Hargraves's opinion, and further, how portions of her testimony can be squared with the RFC determination. In light of these inconsistencies, we remand to the Commissioner for further consideration, *see Burgess*, 537 F.3d at 130 ("[W]e vacate and remand for further consideration because, given the evidence ... as to the condition of Burgess's back, the ALJ failed to give good reasons for not crediting Dr. Smith's opinion ...."), and, if necessary, further development of the record, e.g., by consulting examining and treating physicians about Giddings's exertional limitations during the pertinent time period, *see Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir.2004) ("[W]here the ALJ failed to develop the record sufficiently to make appropriate disability determinations, a remand for further findings [that] would so plainly help to assure the proper disposition of [the] claim ... is particularly appropriate." (internal quotation marks omitted)), *amended on reh'g in part, Butts v. Barnhart*, 416 F.3d 101 (2d Cir.2005).

■ We acknowledge that Giddings's application for the benefits at issue has been pending for over nine years, and "we are mindful of the often painfully slow process by which disability determinations are made, and that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay." *Butts*, 388 F.3d

at 387 (citation and internal quotation marks omitted). But that is not a sufficient basis to reverse and award Giddings benefits: "a decision to reverse and direct an award for benefits should be made only when ... substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir.1996) (citing *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir.1986)) (internal quotation marks omitted). We cannot say with confidence that this is the case here.

Hence, we hereby VACATE the judgment and REMAND to the district court with instructions to remand the matter to the Commissioner for reconsideration in light of this order.