12-1412
*Pellam v. Astrue*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of January, two thousand thirteen.

Present:
    AMALYA L. KEARSE,
    ROBERT A. KATZMANN,
    RAYMOND J. LOHIER, JR.,
        *Circuit Judges.*

---

DAWN PELLAM,

        *Plaintiff-Appellant*,

        v.                                      No. 12-1412

MICHAEL J. ASTRUE, Commissioner of Social Security,

        *Defendant-Appellee.*

---

| | |
|---|---|
| For Petitioner-Appellant: | JAYA SHURTLIFF, Law Offices of Kenneth Hiller, PLLC, Amherst, N.Y. |
| For Defendants-Appellants: | JOANNE JACKSON, Special Assistant United States Attorney (Stephen P. Conte, Regional Chief Counsel–Region II Office of the General Counsel, Social Security Administration, *on the brief*), *for* William J. Hochul, Jr., United States Attorney for the Western District of New York. |

Appeal from the United States District Court for the Western District of New York (Skretny, *C.J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the decision of the district court be and hereby is **AFFIRMED.**

Plaintiff-Appellant Dawn Pellam appeals from a March 27, 2012, judgment of the United States District Court for the Western District of New York (Skretny, *C.J.*), which affirmed the determination of an Administrative Law Judge ("ALJ") that Pellam was not disabled. The ALJ determined that Pellam was unable to perform her past work because she suffered from a spine disorder, abdominal contusion, and migraines. However, he concluded that Pellam had the residual capacity to perform certain functions and, thus, could perform jobs, such as a movie ticket seller or telephone solicitor, that existed in significant numbers in the national economy. Pellam contends that the ALJ erred by (1) rejecting the medical opinion of a consultative examiner and assessing her residual functional capacity without relying on any expert medical source opinion; (2) failing to apply the correct legal standards in judging her credibility; and (3) using an incorrect analysis to determine whether she could perform other jobs in the national economy. We assume the parties' familiarity with the underlying facts and procedural history of this case.

When reviewing the denial of Social Security benefits, we "focus . . . not so much on the district court's ruling as . . . on the administrative ruling" by the ALJ. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). We will "set aside an ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." *Id.* at 77 (internal quotation marks and alteration omitted). An individual is disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

2

. . . has lasted or can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. § 1382c(a)(3)(A).

The Social Security Administration ("SSA") has established a sequential five step process for evaluating disability claims. As relevant to this appeal, if a claimant's impairments are not *per se* disabling under SSA regulations (and they are not here), step four requires "the Secretary to ascertain [the claimant's] residual functional capacity . . . . If the applicant is unable to perform his past work, he is then evaluated at the fifth step in the process, which requires a finding of whether, given his functional ability (RFC), age, education and past work experience, he could perform other jobs that exist in the national economy." *State of N.Y. v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990). The claimant bears the burden of proof at steps one through four; at step five, the SSA bears a limited burden, but "need only show that there is work in the national economy that the claimant can do; [it] need not provide additional evidence of the claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

On appeal, Pellam argues primarily that the ALJ erred in determining her residual functional capacity because he erroneously rejected a medical opinion by a consultative examiner, Dr. Nikita Dave, which concluded that Pellam had "moderate to severe limitation[s] for bending, twisting through the neck and lumbar spine . . . pushing, pulling, lifting, carrying, crouching, and for any jarring activities through the neck and lower back." Certified Administrative Record ("CAR") at 267-68. Alternatively, Pellam contends, the ALJ should at least have sought a medical source opinion or other additional evidence about her limitations from one of her treating physicians before determining her residual functional capacity. She

3

essentially argues that an ALJ cannot determine a claimant's functional limitations without the support of at least some medical opinion concerning those limitations.

There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations, and substantial evidence supported the ALJ's decision not to adopt many of Dr. Dave's conclusions: (1) her findings were inconsistent with nearly contemporaneous medical records from Pellam's treating physicians; (2) Dr. Dave examined Pellam on only one occasion and Pellam did not consent to the full range of tests; (3) Dr. Dave thought Pellam was not completely forthcoming during the examination; and (4) Dr. Dave's ultimate conclusions were relatively vague. *See* 20 C.F.R. § 404.1527(c) (explaining the factors used to weigh medical opinions); *Curry v. Apfel*, 209 F.3d 117, 123 (2d. Cir. 2000) (finding medical opinion that a claimant had "moderate" limitations for lifting and carrying and "mild" ones for standing, walking, pushing, pulling, and sitting was too "vague"), *superceded by regulation on other grounds by*, 20 C.F.R. § 404.1560(c)(2).

However, while the ALJ said he "reject[ed]" Dr. Dave's opinion, CAR at 15, the ALJ's ultimate residual functional capacity determination was consistent with Dr. Dave's analysis in all relevant ways. The ALJ concluded that Pellam indeed had spine dysfunction, and, in addition to finding that she could only do sedentary work, the ALJ incorporated two limitations into his description of Pellam's residual functional capacity—namely, that she could only incidentally reach overhead and support forward extension and that she needed the ability to alternate her working position at will. The limitations found by the ALJ appear to take into account many of Dr. Dave's findings. In fact, when pressed to specify which limitations from Dr. Dave's opinion had been improperly excluded from the ALJ's description of her residual functional capacity,

4

Pellam mentions only the "inability to bend."[1]  Appellant's Reply Br. 9.

Therefore, even if the ALJ did not credit all of Dr. Dave's findings, Dave's medical opinion largely supported the ALJ's assessment of Pellam's residual functional capacity.  Under these circumstances—especially considering that the ALJ also had all of the treatment notes from Pellam's treating physicians—we do not think that the ALJ had any further obligation to supplement the record by acquiring a medical source statement from one of the treating physicians.  *See Rosa*, 168 F.3d at 79 n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information . . . ." (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).[2]

Upon our independent review of the existing record, including Dr. Dave's opinion and the treatment notes from Pellam's doctors, we conclude that the ALJ's residual functional capacity determination was supported by substantial evidence.  Pellam told her treating physicians after each of her two back surgeries that her back pain had significantly improved and that she had limited or no pain.  Tests performed by Dr. Dave and her treating physicians showed

---

[1]  Pellam also criticizes the ALJ for failing to be specific about her ability to sit or stand, but Dr. Dave did not explicitly mention any limitations for sitting or standing in his medical source statement, and, in any event, the ALJ took this factor into consideration by concluding that Pellam needed to alternate at will between sitting and standing.

[2]  We recognize that SSA regulations provide that the agency "will request a medical source statement," but they also explain that the lack of a source statement will not, by itself, necessarily render the record incomplete.  20 C.F.R. § 404.1513(b)(6).  Because Dr. Dave's opinion was largely consistent with the ALJ's conclusions, we need not decide whether a record would be rendered incomplete by the failure to request a medical source opinion from a treating physician if the ALJ made his residual functional capacity determination without the support of *any* expert medical source opinion concerning the claimant's limitations.

5

at times that she had some limitations in her range of motion, but also that she had a "full range of motion" in her bilateral extremities, CAR at 216, and a normal range of motion in her lower extremities, CAR at 229. The ALJ's ultimate determination took account of the fact that Pellam experienced at least some pain, that her range of motion was somewhat limited, and that she needed to alternate between sitting and standing. In sum, the ALJ's residual functional capacity analysis was reasonable and supported by substantial evidence.

We also reject Pellam's remaining arguments. The ALJ did not apply an incorrect legal standard when judging the credibility of Pellam's testimony. Although the ALJ did not explicitly discuss all of the relevant factors, Pellam has failed to point to any authority requiring him to do so. In any event, the ALJ cited the applicable regulation, 20 C.F.R. § 404.1529, explicitly mentioned some of the regulatory factors (such as Pellam's limited use of pain medication), and stated that he considered all of the evidence required by § 404.1529. We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review. However, the ALJ's conclusion that Pellam's testimony was largely incredible was based on substantial evidence. Much of her testimony was inconsistent with statements made to her treating physicians, and, for an extended period of time, she stopped taking her prescription pain medication. Given that "[i]t is the function of [the ALJ], not [this court,] to . . . appraise the credibility of witnesses," *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982), we cannot conclude that the ALJ erred in assessing Pellam's credibility.

6

Finally, in light of our conclusion that the ALJ did not err in determining Pellam's residual functional capacity, it also did not err in using that residual functional capacity to determine (with the help of a vocational expert) whether jobs existed in the national economy that Pellam could perform. We have considered Pellam's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK