UNITED STATES DISTRICT COURT 
NORTHERN DISTRICT OF NEW YORK 

DEBORAH M., 

 Plaintiff, 

 v. 1:20-CV-1600 
 (FJS) 
KILOLO KIJAKAZI, 
Acting Commissioner of Social Security, 

 Defendant. 

APPEARANCES OF COUNSEL 

AVARD LAW OFFICES CRAIG POLHEMUS, ESQ. 
P.O. Box 101110 
Cape Coral, Florida 33910 
Attorneys for Plaintiff 

SOCIAL SECURITY ADMINISTRATION DANIEL STICE TARABELLI, SAUSA 
J.F.K. Federal Building, Room 625 
15 New Sudbury Street 
Boston, Massachusetts 02203 
Attorneys for Defendant 

SCULLIN, Senior Judge 

 MEMORANDUM-DECISION AND ORDER 
 I. INTRODUCTION 
 Plaintiff Deborah M. brought this action pursuant to the Social Security Act, 42 U.S.C. 
§ 405(g) (the "Act"), seeking judicial review of a final decision of the Commissioner of Social 
Security (the "Commissioner"), denying her application for benefits. See generally Dkt. Nos. 1, 
18. Pending before the Court are the parties' cross-motions for judgment on the pleadings under 
Rule 12(c) of the Federal Rules of Civil Procedure. See Dkt. Nos. 18, 23. 
 II. PROCEDURAL HISTORY AND BACKGROUND 
 Plaintiff brought her current claim for disability insurance benefits on November 2, 
2016, alleging disability as of September 18, 2016. See Dkt. No. 24, Administrative Record 
("AR"), at 321.1,2 Plaintiff filed a timely request for a hearing on May 5, 2017. See id. at 221. 

An in-person hearing was held on May 2, 2019, before ALJ Michelle Marcus ("the ALJ") in 
Albany, New York. See id. at 142-196. Plaintiff's attorney, Mr. George Ferro from The Law 
Firm of Alex C. Dell, represented her at the hearing, and a vocational expert ("VE"), Ms. Cherie 
Plante, testified.3 See id. at 142. 
 On July 24, 2019, the ALJ issued a written decision in which she made the following 
findings "[a]fter careful consideration of the entire record…" 
 1) Plaintiff "last met the insured status requirements of the Social 
 Security Act on December 31, 2018." 

 2) Plaintiff "did not engage in substantial gainful activity during the 
 period from her alleged onset date of September 18, 2016 through 
 her date last insured of December 31, 2018." 

 3) Plaintiff "had the following severe impairments: Crohn's disease 
 and colitis; lumbar degenerative disc disease; and superior/bursal 
 surface and interstitial tear of the shoulder." 

 4) Plaintiff "did not have an impairment or combination of 
 impairments that met or medically equaled the severity of one of 

1 All references to page numbers in the Administrative Record are to the Bates Stamp numbers 
in the bottom right corner of those pages. All references to page numbers in other documents in 
the record are to the page numbers that the Court's ECF system generates, which appear in the 
top right corner of those pages. 

2 There appears to be a discrepancy between the date that the ALJ indicated that Plaintiff filed 
her current application for disability insurance benefits and the November 15, 2016 date on the 
application. See AR at 20, 321. However, this discrepancy does not impact the Court's decision 
in this case. 

3 Although spelled "Sherry Plant" in the hearing transcript, it appears from the expert's résumé 
that this is the proper spelling of her name. See AR at 142, 400. 
 the listed impairments in 20 CFR Part 404 Subpart P, Appendix 
 1." 

 5) Plaintiff "had the residual functional capacity to perform 
 sedentary work as defined in 20 CFR 404.1567(a) except that 
 [Plaintiff] can stand or walk for twenty minutes at a time for four 
 hours in an eight-hour workday, and sit for eight hours in an 
 eight-hour workday with regular breaks. [Plaintiff] can lift or 
 carry ten pounds occasionally and five pounds frequently. 
 [Plaintiff] can frequently reach in all directions and frequently 
 handle, finger, and feel. [Plaintiff] can occasionally bend, crouch, 
 kneel, crawl, and climb ramps and stairs. However, [Plaintiff] 
 cannot climb tall ladders, ropes, or scaffolds. [Plaintiff] can 
 frequently perform the stooping required to go from a standing to 
 seated position. [Plaintiff] also requires access to a bathroom 
 within the workplace." 

 6) Plaintiff "was capable of performing past relevant work as an 
 information clerk (DOT 237.637-022, SVP 4, sedentary per the 
 DOT, light as actually performed) and service clerk (DOT 
 221.367-070, SVP 4, sedentary per the DOT, light as actually 
 performed). This work did not require the performance of work-
 related activities precluded by [Plaintiff's] residual functional 
 capacity." 

 7) Plaintiff "was not under a disability, as defined in the Social 
 Security Act, at any time from September 18, 2016, the alleged 
 onset date, through December 31, 2018, the date last insured." 

See AR at 22-34 (citations omitted). 
 The Appeals Council of the Social Security Administration granted Plaintiff's request 
for review on August 12, 2020. See AR at 315. On October 27, 2020, the Appeals Council 
issued a written decision in which it made the following findings: 
 1. Plaintiff "met the special earnings requirement of the Act on 
 September 18, 2016, the date [Plaintiff] stated she became unable 
 to work and met them through December 31, 2019." 

 2. Plaintiff "has not engaged in substantial gainful activity since 
 September 18, 2016." 

 3. Plaintiff "has the following severe impairments: Crohn's disease 
 and colitis; lumbar degenerative disc disease; and superior/bursal 
 surface and interstitial tear of the shoulder, but does not have an 
 impairment or combination of impairments which is listed in, or 
 which is medically equal to an impairment listed in 20 CFR Part 
 404, Subpart P, Appendix 1." 

 4. Plaintiff "has the residual functional capacity to perform 
 sedentary work as defined in 20 CFR 404.1567(a) except that 
 [Plaintiff] can stand or walk for 20 minutes at a time for 4 hours 
 in an 8-hour workday, and sit for 8 hours in an 8-hour workday 
 with regular breaks. [Plaintiff] can lift or carry 10 pounds 
 occasionally and 5 pounds frequently. [Plaintiff] can frequently 
 reach in all directions and frequently handle, finger and feel. 
 [Plaintiff] can occasionally bend, crouch, kneel, crawl and climb 
 ramps and stairs. However, [Plaintiff] cannot climb tall ladders, 
 ropes, or scaffolds. [Plaintiff] can frequently perform the 
 stooping required to go from a standing to seated position[ ]. 
 [Plaintiff] also requires access to a bathroom within the 
 workplace." 

 5. Plaintiff's "alleged symptoms are not consistent with and 
 supported by the evidence of record for the reasons identified in 
 the body of this decision." 

 6. "The limitations on [Plaintiff's] ability to perform work-related 
 activities as set forth in Finding [4] do not preclude the 
 performance of past relevant work as information clerk (DOT 
 237.367-022) and service clerk (DOT 221.367-070). Therefore, 
 [Plaintiff's] combination of impairments does not preclude the 
 performance of past relevant work (20 CFR 404.1520(e)). 
 [Plaintiff] is capable of performing her past relevant work as 
 generally performed." 

 7. Plaintiff "was not under a disability, as defined in the Social 
 Security Act, at any time from September 18, 2016, the alleged 
 onset date, through July 24, 2019, the date of the Administrative 
 Law Judge's decision." 

See AR at 7-8. 
 Plaintiff then commenced this action on December 23, 2020, filing a supporting brief on 
October 20, 2021. See Dkt. Nos. 1, 18. Defendant filed a responsive brief on February 4, 2022. 
See Dkt. No. 23. In support of her motion, Plaintiff argues that the ALJ and Appeals Council 
(1) did not have constitutional authority to decide Plaintiff's claim; (2) erred in determining 
Plaintiff's residual functional capacity ("RFC"); and (3) erred in concluding that Plaintiff was 
capable of performing past relevant work at Step 4. See generally Dkt. No. 13 at 3, 10-13. 

 III. DISCUSSION 
A. Standard of review 
Absent legal error, a court will uphold the Commissioner's final determination if there is 
substantial evidence to support it. See 42 U.S.C. § 405(g). The Supreme Court has defined 
substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant 
evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson 
v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may 
not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably 
have reached a different result upon a de novo review.'" Cohen v. Comm'r of Soc. Sec., 643 F. 
App'x 51, 52 (2d Cir. 2016) (Summary Order) (quoting Valente v. Sec'y of Health & Human 
Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence 

standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a 
reasonable factfinder would have to conclude otherwise.'" Brault v. Soc. Sec. Admin., Comm'r, 
683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted). 
To be eligible for benefits, a claimant must show that she suffers from a disability within the 
meaning of the Act. The Act defines "disability" as an inability "to engage in any substantial 
gainful activity [("SGA")] by reason of any medically determinable physical or mental 
impairment which can be expected to result in death or which has lasted or can be expected to 
last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To 
determine if a claimant has sustained a disability within the meaning of the Act, the ALJ 
follows a five-step process: 
 1) The ALJ first determines whether the claimant is currently 
 engaged in SGA. See C.F.R. §§ 416.920(b), 416.972. If 
 so, the claimant is not disabled. See 20 C.F.R. § 416.920(b). 

 2) If the claimant is not engaged in SGA, the ALJ determines if the 
 claimant has a severe impairment or combination of impairments. 
 See 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. 
 See id. 

 3) If the claimant has a severe impairment, the ALJ determines if the 
 impairment meets or equals an impairment found in the appendix 
 to the regulations (the "Listings"). If so, the claimant is disabled. 
 See 20 C.F.R. § 416.920(d). 

 4) If the impairment does not meet the requirements of the Listings, 
 the ALJ determines if the claimant can do her past relevant work. 
 See 20 C.F.R. § 416.920(e), (f). If so, the claimant is not 
 disabled. See 20 C.F.R. § 416.920(f). 

 5) If the claimant cannot perform her past relevant work, the ALJ 
 determines if she can perform other work, in light of her RFC, 
 age, education, and experience. See 20 C.F.R. § 416.920(f), (g). 
 If so, then she is not disabled. See 20 C.F.R. § 416.920(g). A 
 claimant is only entitled to receive benefits if she cannot perform 
 any alternative gainful activity. See id. 

For this test, the burden of proof is on the claimant for the first four steps and on the 
Commissioner for the fifth step if the analysis proceeds that far. See Balsamo v. Chater, 142 
F.3d 75, 80 (2d Cir. 1998) (citation omitted). 

B. Whether the ALJ and Appeals Council had constitutional authority to decide 
Plaintiff's claim 

 As a threshold matter, Plaintiff complains that Andrew Saul, as the former 
Commissioner of Social Security, was removable only for cause and served a longer term than 
the President of the United States; and, thus, the "SSA's structure is unconstitutional as it 
violates separation of powers." See Dkt. No. 18 at 30-31 (citing Seila Law LLC v. CFPB, 140 
S. Ct. 2183 (2020)). Plaintiff argues that the ALJ's delegation of authority in this case came 
from Mr. Saul; and, therefore, it is constitutionally defective. See id. at 31. Similarly, Plaintiff 
contends that the ALJ decided her case "under regulations promulgated by Mr. Saul when Mr. 

Saul had no constitutional authority to issue those rules." See id. Plaintiff asserts that this is 
"just as true with respect to SSA's Appeals Council judges[.]" See id. Plaintiff argues that the 
Biden Administration apparently recognized the constitutional defect as it fired Mr. Saul under 
the authority in Seila Law. See id. at 32 (citing Seila Law LLC, 140 S. Ct. at 2204). 
Accordingly, Plaintiff requests that the Court remand this matter for a de novo hearing before a 
new ALJ "who does not suffer from the unconstitutional taint of having previously heard and 
decided this case when the ALJ had no lawful authority to do so." See id. at 33 (citing Lucia v. 
S.E.C., 138 S. Ct. 2044 (2018)). 
 The Government agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to 
the extent that it is construed as limiting the President's authority to remove the Commissioner 

without cause. See Dkt. No. 23 at 5. However, the Government responds that such conclusion 
does not support setting aside an unfavorable SSA disability benefits determination. See id. 
According to the Government, as the Supreme Court explained in Collins v. Yellen, 141 S. Ct. 
1761, 1787-89 (2021), even where an unconstitutional statutory removal restriction exists, a 
plaintiff seeking relief on that basis must show that the restriction actually caused her harm. See 
id. The Government further contends that a variety of other legal doctrines – harmless error, de 
facto officer, the rule of necessity, and broad prudential considerations – reinforce that Plaintiff 
is not entitled to relief simply because 42 U.S.C. § 902(a)(3) violates the separation of powers. 
See id. at 6-16. 
 Courts in this District have recently rejected identical arguments to the one Plaintiff 
makes here. See Betty Jean B. v. Kijakazi, No. 6:21-CV-0125 (ML), 2022 WL 873827, *5-*7 
(N.D.N.Y. Mar. 24, 2022) (Lovric, M.J.); Juliana Jolean A. v. Kijakazi, No. 5:20-cv-1268 
(BKS), 2022 WL 595361, *2-*4 (N.D.N.Y. Feb. 28, 2022) (Sannes, J.). Just as the parties did 

here, those courts noted that, "[i]n the wake of Seila Law and Collins, many district courts have 
assumed or held that the restriction on the President's power to remove the Commissioner 
violates the separation of powers." Betty Jean B., 2022 WL 873827, at *5 (citing, e.g., Kasey V. 
v. Comm'r of Soc. Sec., 20-CV-6153, 2022 WL 102048, at *5 (W.D. Wash. Jan. 11, 2022) 
(parenthetical omitted); Katrina R. v. Comm'r of Soc. Sec., 21-CV-4276, 2022 WL 190055, at 
*5 (S.D. Ohio Jan. 21, 2022) (parenthetical omitted), report-recommendation adopted by 2022 
WL 456693 (S.D. Ohio Feb. 15, 2022); see also Office of Legal Counsel, Constitutionality of 
the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542, at *7 (July 8, 
2021) (parenthetical omitted)); see Juliana Jolean A., 2022 WL 595361, at *3. Nonetheless, 
those courts found that the plaintiffs had not stated cognizable constitutional claims because, 

"even assuming the Commissioner's statutory tenure protection is unconstitutional, Plaintiff has 
not alleged facts which would entitle her to a remand for a new hearing or any other relief." 
Juliana Jolean A., 2022 WL 595361, at *4; Betty Jean B., 2022 WL 873827, at *6. 
 The Court comes to the same conclusion with respect to Plaintiff in this case. Her 
complaint does not allege any connection between the removal restriction and the ALJ's and 
Appeals Council's decisions denying her application for disability insurance benefits. See Dkt. 
No. 1. Furthermore, although Plaintiff argues that the unconstitutional restriction on the 
President's ability to remove the Commissioner creates a defect in the Commissioner's authority 
– and, by extension, that of the ALJ and the Appeals Council – under Collins, courts have found 
that, "where the officers in question are 'properly appointed,' 'there is no reason to regard any of 
[their] actions' as 'void.'" Juliana Jolean A., 2022 WL 595361, at *4 (quoting Collins, 141 S. 
Ct. at 1787, 1788 n.23 ([holding that] "[t]he unlawfulness of the removal provision does not 
strip the Director of the power to undertake the other responsibilities of his office.")). "In short, 

'under Collins, actions taken by properly appointed officials are not void.'" Id. (quoting 
Satterthwaite v. Kijakazi, No. 20-cv-724, 2022 WL 468946, at *5, 2022 U.S. Dist. LEXIS 
27204 (W.D.N.C. Feb. 15, 2022)). Plaintiff has not alleged that Mr. Saul was improperly 
appointed; she merely challenges the statutory provision surrounding his removal. 
 Without alleging any connection between the removal restriction and the unfavorable 
decision denying her claim for benefits, the Court further finds that Plaintiff has not alleged that 
the unconstitutional removal restriction itself inflicted "compensable harm." Betty Jean B., 
2022 WL 873827, at *6 (citing, cf., Collins, 141 S. Ct. at 1789). "Courts considering similar 
changes have uniformly rejected requests for remand." Id. (citing Katrina R., 2022 WL 
190055, at *5 (parenthetical omitted); White v. Comm'r of Soc. Sec., 20-CV-1695, 2022 WL 

463318, at *7 (E.D. Cal. Feb. 15, 2022) (parenthetical omitted); Satterthwaite, 2022 WL 
468946, at *6 (parenthetical omitted); Lisa Y. v. Comm'r of Soc. Sec., ___ F. Supp. 3d ___, 21-
CV-5207, 2021 WL 5177363, at *7-8 (W.D. Wash. Nov. 8, 2021) (parenthetical omitted). See 
also Collins, 141 S. Ct. at 1802 (Kagan, J., concurring) ([remarking, in response to the changes 
following Seila Law,] "I doubt the mass of SSA decisions – which would not concern the 
President at all – would need to be undone.")). Accordingly, because Plaintiff has not plausibly 
alleged any connection between the denial of her claim and the alleged unconstitutional 
statutory tenure protection afforded to the Commissioner, the Court rejects Plaintiff's contention 
that she is entitled to a de novo hearing on her claim. 
C. The agency's RFC finding 
 Plaintiff contends that the ALJ's and Appeals Council's RFC findings are not supported 
by the substantial evidence in the record. See Dkt. No. 18 at 25-30. According to Plaintiff, the 

ALJ and Appeals Council erred in failing to find Plaintiff's mental impairments severe and in 
failing to include any relevant limitations in the RFC. See id. at 25-28. Specifically, in setting 
the RFC, Plaintiff argues that the ALJ failed to properly consider opinions from Dr. Brett 
Hartman, Psy.D. See id. at 27-28. Plaintiff further argues that the ALJ and Appeals Council 
erred in failing to include in her RFC absences due to her physical impairments or to quantify 
the frequency and duration during which time she could use the restroom. See id. at 28-30. The 
Court addresses each of these issues in turn. 

1. Plaintiff's alleged mental impairments 
 With respect to her mental impairments, Plaintiff claims that she has been assessed with 

bipolar disorder, "rule out" unspecified bipolar and related disorder, probable or possible 
obsessive-compulsive disorder, major depressive disorder recurrent, depression, anxiety, panic 
disorder, and urinary bladder disorder with panic attacks. See id. at 25-26. According to 
Plaintiff, consultative examining psychologist Dr. Hartman opined that she had mild difficulty 
making appropriate decisions, mild to moderate problems relating adequately with others, and 
moderate difficulty dealing appropriately with normal stressors of life. See id. at 26 (citing AR 
at 738). Plaintiff asserts that the ALJ and Appeals Council did not find her mental impairments 
severe and did not include any relevant limitations in her RFC. See id. Plaintiff argues that 
failure to find her mental impairments severe may have been harmless error, but it was not 
harmless for the ALJ and Appeals Council to fail to include relevant mental limitations in her 
RFC. See id. 
 Plaintiff contends that, in setting the RFC, the ALJ failed to properly consider Dr. 
Hartman's opinions, including that she had moderate difficulty dealing appropriately with the 

normal stressors of life, which, among other things, appeared consistent with her psychiatric 
problems, and that he gave her a fair to guarded prognosis based on her combination of multiple 
symptoms. See id. at 27. In particular, Plaintiff argues that the ALJ erred in giving great 
weight to Dr. Hartman's opinion "to the extent that it is consistent with the residual functional 
capacity" but less weight to the other portions of his opinion regarding her moderate and mild-
to-moderate limitations. See id. (citing AR at 29). Plaintiff asserts that the ALJ gave portions 
of Dr. Hartman's opinion less weight because Plaintiff was "pleasant" and "cooperative" during 
the exam, the evidence suggests that she became less social due to physical problems "rather 
than any significant mental health issues," and she had intact attention and concentration. See 
id. at 28 (citing AR at 29). However, Plaintiff argues that these reasons do not support giving 

Dr. Hartman's opinions regarding her prognosis and difficulties dealing with stress less weight. 
See id. Accordingly, in failing to include limitations related to her mental health impairments in 
her RFC, Plaintiff contends that the ALJ and the Appeals Council rendered decisions that were 
unsupported by substantial evidence. See id. 
 As noted in Step 2, above, to be found disabled, a claimant "must have a severe 
impairment." 20 C.F.R. § 416.920(c). If a claimant does "not have any impairment or 
combination of impairments which significantly limits [her] physical or mental ability to do 
basic work activities," then she does not have a severe impairment and is not disabled. Id. 
"Although the Second Circuit has held that this step is limited to 'screen[ing] out de minimis 
claims,' Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995), the 'mere presence of a disease or 
impairment, or establishing that a person has been diagnosed or treated for a disease or 
impairment' is not, by itself, sufficient to render a condition 'severe.'" Cuenca v. Comm'r of Soc. 
Sec., No. 3:14-CV-0859 (GTS/WBC), 2016 WL 2865726, *3 (N.D.N.Y. Apr. 19, 2016) 

(quoting Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)), adopted by 2016 WL 
2858858 (N.D.N.Y. May 16, 2016). "Indeed, a 'finding of not severe should be made if the 
medical evidence establishes only a slight abnormality which would have "no more than a 
minimal effect on an individual's ability to work."'" Id. at *4 (quoting Rosario v. Apfel, No. 97-
CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Bowen v. Yuckert, 482 
U.S. 137, 154 n.12, 107 S. Ct. 2287 (1987))). Furthermore, "[i]t is axiomatic that the ALJ is 
required to consider a plaintiff's mental impairments, even if not severe, in formulating the 
RFC." Rookey v. Comm'r of Soc. Sec., No. 7:14-cv-914 (GLS), 2015 WL 5709216, *4 
(N.D.N.Y. Sept. 29, 2015) (Sharpe, J.) (citing 20 C.F.R. 404.1545(a)(2)) (other citations 
omitted). If an ALJ finds that a non-severe mental impairment causes mild or moderate 

limitations, then the ALJ must account for those limitations in the RFC determination. See 
Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) (citing 20 C.F.R. 
§ 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2)); see also Wells v. Colvin, 727 F.3d 1061, 1065 
(10th Cir. 2013); accord MacDonald v. Comm'r of Soc. Sec., No. 17-CV-921, 2019 WL 
3067275, *3 (W.D.N.Y. July 11, 2019). 
 During Dr. Hartman's psychiatric evaluation, Plaintiff allegedly reported that she had 
difficulty falling asleep due to racing thoughts, she had been struggling with depression for 
several years, and she took time off of work due to anxiety and physical problems. See AR at 
736. Plaintiff acknowledged sadness, social isolation, agitation, low energy, and crying spells, 
as well as a general loss of interest and frequent irritability. See id. She reportedly told Dr. 
Hartman that she got overwhelmed easily, had concentration problems, and often "tune[d] 
people out and d[id] not pay attention in conversations." See id. Plaintiff reported that she felt 
like she was "living in a fog." See id. She had never been suicidal nor homicidal, but she 

reported to Dr. Hartman that she had panic attacks at least once per week, which included 
palpitations, nausea, breathing problems, and trembling. See id. Plaintiff told Dr. Hartman that 
she felt an urgent need to escape stressful situations, including crowds and family gatherings, 
but sometimes her panic attacks were random. See id. Plaintiff reported sporadic manic 
episodes in which she became very talkative, spent money recklessly, and would have "flight of 
ideas" but very little follow through. See id. She told Dr. Hartman that she had a tendency 
toward compulsive cleaning, but she claimed that she was frustrated because of her back; she 
wished that she could clean things but her back would hurt too much. See id. 
 With respect to her modes of living, Plaintiff reported that she was able to dress, bathe, 
and groom herself. See id. at 738. She could do her own cooking, cleaning, and laundry, but 

she took things very slowly and took frequent breaks. See id. She stated that she went 
shopping with her husband, and he helped her with money management. See id. Plaintiff 
reported that she rarely drove, she had no contact with friends, but she got along well with her 
family. See id. She told Dr. Hartman that she spent a lot of her day sitting in a recliner 
watching television, but she used to be very acting in bowling, seeking friends, and going out. 
See id. 
 Upon examination, Dr. Hartman found Plaintiff to be a "cooperative, pleasant, yet 
anxious individual" with an anxious affect, dysphoric mood, and alert and oriented x3. See id. 
at 737. Dr. Hartman determined that Plaintiff's attention and concentration appeared to be 
generally intact as well as her recent and remote memory skills. See id. In his medical source 
statement, Dr. Hartman concluded that Plaintiff was able to follow and understand simple 
directions and perform simple tasks. See id. at 738. He found that she had a fair ability to 
maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform 

complex tasks independently. See id. Dr. Hartman determined that Plaintiff had mild difficulty 
making appropriate decisions and had "mild to moderate problems" relating adequately with 
others. See id. He also concluded that Plaintiff had moderate difficulty dealing appropriately 
with the normal stressors of life. See id. Dr. Hartman concluded that each of these limitations 
"appear[ed] consistent with psychiatric problems." See id.4 Ultimately, Dr. Hartman gave 
Plaintiff a fair to guarded prognosis "given the combination of multiple symptoms," and he 
recommended that she take part in regular individual counseling and have her medication 
reevaluated. See id. 
 The ALJ found that Plaintiff's mental health symptoms were non-severe and discussed 
them when coming to her RFC finding. See id. at 29. With respect to Dr. Hartman's opinion, 

the ALJ gave it "great weight to the extent that it [wa]s consistent with the [RFC]." See id. 
However, the ALJ noted, "with respect to the other portions of his opinion regarding moderate, 
and mild to moderate limitations," she afforded those statements "less weight." See id. For 
example, the ALJ indicated that Dr. Hartman found that Plaintiff had mild to moderate 
problems relating adequately with others; yet, in his examination of her, he remarked that 

4 Dr. Hartman ultimately diagnosed Plaintiff with "urinary bladder disorder with panic attacks." 
See AR at 738. At Plaintiff's hearing, the ALJ remarked that "urinary bladder disorder with 
panic attacks . . . can't possibly be what [Dr. Hartman] meant to say." See AR at 169. The ALJ 
stated that she was unsure if they could get a corrected opinion, but she would "look into" it. 
See id. at 170. There is no indication in the ALJ's decision that she looked into it or discovered 
with what condition Dr. Hartman meant to diagnose Plaintiff. 
Plaintiff was "pleasant" and "cooperative" during the exam. See id. The ALJ further stated 
that, although Plaintiff reported that she used to be very active bowling and hanging out with 
friends, her testimony and the evidence in the record supported a finding that she became less 
social "due to physical problems rather than any significant mental health issues." See id. With 

respect to Dr. Hartman's conclusion that Plaintiff had moderate difficulty dealing appropriately 
with stress, the ALJ also found that it was "not supported by the record." See id. Specifically, 
she pointed to Dr. Hartman's indication that, despite Plaintiff's anxiety throughout the exam, she 
had intact attention and concentration and recent and remote memory skills. See id. 
 "'There is no requirement that the agency accept the opinion of a consultative examiner 
concerning a claimant's limitations . . . .'" Walker v. Colvin, No. 3:15-CV-465 (CFH), 2016 WL 
4768806, *10 (N.D.N.Y. Sept. 13, 2016) (Hummel, M.J.) (quoting Pellam v. Astrue, 508 Fed. 
Appx. 87, 89-90 (2d Cir. 2013) [(summary order)]). "Indeed, an ALJ may properly 'credit those 
portions of a consultative examiner's opinion which the ALJ finds supported by substantial 
evidence of record and reject portions which are not so supported.'" Id. (quoting Viteritti v. 

Colvin, No. 14-6760 (DRH), 2016 WL 4385917, at *11 (E.D.N.Y. Aug. 17, 2016) (citing 
Pellam, 508 Fed. Appx. at 89)). "This is true even where the ALJ relies on a consultative 
examiner's examination findings, but rejects the consultative examiner's medical source 
statement setting forth '[functional] limitations.'" Id. (quoting Pellam, 208 Fed. Appx. at 90). 
 In this case, not only did the ALJ conclude that Plaintiff's mental health symptoms were 
non-severe, but she also rejected Dr. Hartman's opinion to the extent that she found that those 
symptoms caused Plaintiff any mild or moderate limitations. The ALJ rejected those limitations 
as inconsistent with the evidence in the record, and she fully explained her reasoning, including 
that Plaintiff was pleasant and cooperative during exams, had intact concentration, attention, 
and memory, and stopped social activities like bowling due to her physical limitations. The 
Court therefore finds that, by explaining why she discredited portions of the Dr. Hartman's 
opinion that were inconsistent with the record, the ALJ did not err in discrediting them. See 
Carl D. v. Comm'r of Soc. Sec., No. 5:17-cv-01114 (TWD), 2019 WL 1115704, *10 (N.D.N.Y. 

Mar. 11, 2019) (Dancks, M.J.). Furthermore, since the ALJ did not find that there were any 
functional limitations associated with Plaintiff's non-severe mental health symptoms that would 
affect her capacity to work, the ALJ was not required to take those symptoms into account or 
create any restrictions when determining Plaintiff's RFC. See Parker-Grose, 462 F. App'x at 
18. Accordingly, the Court finds that the ALJ did not err in creating an RFC for Plaintiff that 
did not reflect mental health limitations. 

2. Absences and breaks due to physical impairments 
 Plaintiff next contends that the ALJ and Appeals Council erred in failing to include 
absences, time off task, and frequency and duration of restroom visits in their RFCs. See Dkt. 

No. 18 at 28. Plaintiff points to the fact that, in a 34-month period, she was treated on 49 days 
for her Crohn's disease and colitis. See id. at 29. Plaintiff asserts that her flare-ups were 
"completely unpredictable," and her employer, Schenectady County, notified her that her sick 
leave accruals would be exhausted seven months before her alleged onset date, she had 
exceeded her authorized Family and Medical Leave Act ("FMLA") leave, and the County 
ultimately terminated her for excessive and extended absences. See id. Nonetheless, Plaintiff 
argues, the ALJ erred when she neglected to ask the VE about employer tolerance for absences 
or for time off-task and when she failed to include Plaintiff's need for excessive bathroom 
breaks and frequent medical treatment in the RFC. See id. at 29-30. Defendant responds that 
many of Plaintiff's medical appointments were of the non-emergency, outpatient variety; and, 
therefore, the ALJ correctly concluded that Plaintiff failed to set forth facts or medical opinions 
revealing that she required treatment on a regular schedule. See Dkt. No. 23 at 19. Defendant 
also contends that the ALJ properly rejected the notion that her colitis and Crohn's disease 

necessitated excessive restroom breaks. See id. at 21. 
 "In rendering an RFC determination, the ALJ must consider objective medical facts, 
diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective 
symptoms, including pain and descriptions of other limitations." Lynn J. v. Kijakazi, No. 3:20-
CV-1294 (ATB), 2022 WL 912981, *6 (N.D.N.Y. Mar. 29, 2022) (citing 20 C.F.R. 
§§ 404.1545, 416.945) (other citations omitted). "An ALJ must specify the functions plaintiff is 
capable of performing, and may not simply make conclusory statements regarding a plaintiff's 
capacities." Id. (citations omitted). "The RFC assessment must also include a narrative 
discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical 
facts, and non-medical evidence." Id. (citing Natashia R. v. Berryhill, No. 3:17-CV-01266 

(TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 
374184, at *7)). 
 In her decision, the ALJ noted that Plaintiff reported that she had a history of digestive 
disorders and that her condition had worsened overtime. See AR at 26. Although Plaintiff 
conceded that her pain varied, she testified that she experienced frequent "flare ups" of her 
colitis and Crohn's disease, manifested by various symptoms such as diarrhea and severe pain. 
See id. The ALJ found that these complaints about the intensity, persistence, and limiting 
effects of these diseases were "inconsistent with clinical observations and testing." See id. at 
27. The ALJ pointed to Plaintiff's treatment notes in which she denied bloody diarrhea, mucus 
in her stool, fever, chills, and Dr. Morerer's conclusion that she had "only an acute episode of 
abdominal pain and diarrhea that was likely related to an infectious etiology." See id. In April 
2017, Plaintiff reported that she "'never had an exacerbation in many years,'" and she was able 
to continue her daily activities with no issues. See id. (quoting AR at 1129). The ALJ also 

noted that, in Plaintiff's January 2019 treatment notes, her Crohn's disease was "'intermittently 
symptomatic,'" and Plaintiff denied gastrointestinal symptoms during her physical examination. 
See id. (quoting AR at 1073). 
 The ALJ further found that Plaintiff's subjective complaints were "inconsistent with 
objective laboratory testing," such as her June 2018 colonoscopy that revealed only nonbleeding 
internal and external hemorrhoids with normal mucosa in the entire colon and a "normal colon." 
See id. Random colon biopsies were negative for microscopic colitis or ileitis in the terminal 
ileum. See id. The ALJ pointed to an April 2018 CT scan in which there was no evidence of 
appendicitis, diverticulitis, obstruction involving the small bowel biliary system or urinary 
system, no evidence of colonic wall thickening, no abdominal inflammatory processes or mass, 

no evidence of obstructive pattern or dilated bowel loops, and only mild to moderate retained 
stool in the colon. See id. (citing AR, Ex. 9F). The ALJ also noted that Plaintiff had multiple 
abdominal series reports that were unremarkable and revealed normal bowel gas patterns with 
no evidence of renal calculi, and an ultrasound of her abdomen revealed no ascites. See id. 
 Although Plaintiff had a mildly distended abdomen during one examination in April 
2017, the ALJ remarked that Plaintiff was reported to have good bowel sounds and no masses. 
See id. Furthermore, Plaintiff's June 2018 treatment notes revealed that she complained of 
having up to twenty bowel movements per day with lower quadrant cramping; but, upon 
physical examination, Plaintiff's abdomen was soft and nondistended. See id. Despite some 
mid-abdominal discomfort and tenderness, the ALJ noted that there was no evidence of 
rebound, guarding, or rigidity, and she had normoactive bowel sounds. See id. The ALJ also 
pointed to the fact that Plaintiff did not take any medication for her abdominal pain. See id. 
Finally, with respect to the objective laboratory testing, the ALJ noted that it "consistently 

revealed no evidence of obstruction, perforation, or abscess." There was no leukocytosis, no 
significant wall thickening, small bowel distention, intestinal mass or stricture, mesenteric 
inflammatory process, or omental thickening. See id. at 28. At most, the ALJ noted, "objective 
laboratory testing revealed 'questionable [and] very mild colitis[.]'" See id. (quoting AR at 
1194). Based on these findings, the ALJ included in Plaintiff's RFC that she "require[d] access 
to a bathroom within the workplace." See id. at 26. 
 As stated above, an ALJ must make an RFC determination after considering both the 
medical and non-medical evidence. See Lynn J., 2022 WL 912981, at *6. The ALJ in this case 
similarly noted this, indicating that "whenever statements about the intensity, persistence, or 
functionally limiting effects of pain or other symptoms are not substantiated by objective 

medical evidence, [the ALJ] must consider other evidence in the record to determine if 
[Plaintiff's] symptoms limit the ability to do work-related activities." See AR at 26. 
Nonetheless, it appears that the ALJ did not consider the non-medical evidence included in 
notices from Plaintiff's employer regarding the fact that she exceeded her sick and FMLA leave 
accruals and that she was ultimately terminated for excessive and extended absences stemming 
from an alleged disability. See id. at 43-126. 
 For example, on October 21, 2016, approximately one month after Plaintiff's alleged 
onset date of September 18, 2016, Plaintiff's employer notified her that she had exceeded her 
FMLA leave. See id. at 96. The letter indicated that Plaintiff had been continuously absent 
from August 18, 2016 through October 17, 2016, and then she was absent against October 19, 
2016 through October 21, 2016. See id. According to the letter, Plaintiff had been approved for 
FMLA leave due to "episodic flare-ups of up to 2 days in duration, occurring every 2-3 
months." See id. Plaintiff had received a similar notice on August 23, 2016 about her absences 

from July 28, 2016 through August 18, 2016. See id. at 94. Although it pre-dated her alleged 
onset date, Plaintiff also submitted into the record a notice from her employer on February 5, 
2016, which indicated that she was last able to work on January 27, 2016, and her remaining 
sick accruals would be exhausted on February 12, 2016. See id. at 85. 
 Most notably, on January 26, 2018, Plaintiff's employer notified her of its intent to 
terminate her employment on the basis that, since October 19, 2016, she had been "continuously 
absent from work and unable to perform the duties of [her] position as a Facilities Aide by 
reason of a disability other than a disability resulting from occupational injury or disease as 
defined in the workmen's compensation law." See id. at 122. According to Plaintiff's employer, 
in accordance with Civil Service Law § 73, "an employee who has been continuously absent 

from work and unable to perform the duties of his position for one year or more as a result [of] 
such a disability may be terminated and his position may be filled by a permanent 
appointment." See id. at 122, 125 (citing N.Y. Civil Serv. L. § 73). 
 Of the various absences from work that Plaintiff referenced in her memorandum of law, 
many of them pertained to her Crohn's disease, colitis, or other gastrointestinal distress. For 
example, in the week following her alleged onset date in September 2016, Plaintiff complained 
of having diarrhea and five to six bowel movements per day. See id. at 643. She further 
complained of and was hospitalized for abdominal pain in November and December 2016. See 
id. at 1209, 1215, 1258. In April 2017, Plaintiff was again hospitalized with abdominal 
discomfort, bloating, diarrhea, and abdominal distention. See id. at 1125, 1129, 1197. In 
December 2017, Plaintiff continued to complain of bloating, a distended stomach, and diarrhea. 
See id. at 1105, 1107. Plaintiff was also treated three times in March 2018 for symptoms 
relating to Crohn's disease and colitis, including abdominal pain, loose stools, and diarrhea. See 

id. at 897, 1087, 1098. The next month, April 2018, Plaintiff alleged that she suffered from 
abdominal discomfort. See id. at 744. She also had diarrhea, lower abdominal cramping, and 
complained of up to 20 bowel movements daily. See id. at 740-741. 
 Furthermore, with respect to her Crohn's disease, Plaintiff testified that she had a 
monthly flare-up, and if it was "mild," the diarrhea "isn't as bad," but her pain was "still 
excruciating." See id. at 159-160. When her flare-ups were severe, which Plaintiff reported 
occurred twice per year, she would end up in the hospital. See id. at 160-161. Plaintiff 
estimated that, when she was working, she called out of work four to five times per month 
because of her depression, panic attacks, and Crohn's disease. See id. at 169. She stated that 
she was written up "a couple of times" for her absences when she worked for Schenectady 

County, and there were no other disciplinary issues that led to her write-ups. See id. 
 The ALJ did not refer to Plaintiff's employer's notices in her decision, nor did the 
Appeals Council address them in its decision, even though it appears to the Court that this non-
medical evidence tends to support Plaintiff's subjective complaints regarding her Crohn's 
disease and colitis. There also appears to the Court to be evidence in the medical record 
supporting Plaintiff's recurrent treatment and hospitalizations for gastrointestinal distress, which 
the ALJ rejected in favor of conflicting medical evidence without discussion. Furthermore, as 
Plaintiff points out, the ALJ did not ask the VE about employers' tolerance for absenteeism and 
time off-task for frequent restroom breaks despite finding that Plaintiff had severe 
gastrointestinal impairments. This is particularly problematic since this evidence shows that 
Plaintiff was terminated for her absenteeism; yet, at Step 4, the ALJ found that Plaintiff was 
capable of doing her past relevant work. By only concluding that Plaintiff "requires access to a 
bathroom within the workplace," the ALJ apparently concluded that Plaintiff would not need to 

be absent from work on a regular basis. See Aurilio v. Berryhill, No. 3:18-cv-587 (MPS), 2019 
WL 4438196, *8 (D. Conn. Sept. 16, 2019). Without any explanation as to why the ALJ 
evidently concluded that an RFC without a significant level of absenteeism was justified, the 
Court is left to conclude that the ALJ erred in coming to Plaintiff's RFC, and that finding was 
not supported by the substantial evidence in the record. Remand is therefore appropriate for the 
agency to consider the evidence regarding Plaintiff's absenteeism and off-task behavior in 
taking frequent restroom breaks. To do so, the ALJ should consult with a VE about employers' 
tolerance for such absenteeism and off-task conduct. 

D. The agency's finding at Step 4 

 Plaintiff lastly contends that, despite the lack of VE testimony or evidence supporting 
such finding, the ALJ and Appeals Council found that she was capable of performing past 
relevant work as an information clerk and a service clerk as generally performed. See Dkt. No. 
18 at 23. According to Plaintiff, both of these positions are sedentary with job duties that 
occasionally require walking and standing. See id. (citing SSR 83-10). Plaintiff notes that the 
RFC limits her to standing or walking for 20 minutes at a time, and no evidence was presented 
regarding whether information clerks and service clerks have to stand or walk for more than 20 
minutes at a time. See id. Plaintiff argues that, had the ALJ asked the VE whether Plaintiff 
could perform her past work – either as actually performed or as generally performed – she and 
the Appeals Council would have been able to rely upon the VE's response as providing 
substantial evidence of her ability to perform such work. See id. at 24. However, without a 
VE's response to a hypothetical question on this basis, Plaintiff asserts that the ALJ's and 
Appeals Council's findings at Step 4 could not be based on substantial evidence. See id. 

Plaintiff further contends that this error was not harmless because the ALJ did not identify any 
transferable job skills; and, if she could not perform her past relevant work, she would have 
been found disabled under the Medical-Vocational Guidelines rule 201.14 due to her age, 
education, and past work experience. See id. 
 Plaintiff also argues that her position as a facilities aide was a "composite job" because 
she was responsible for payroll, bill paying, handling maintenance staff, working between two 
buildings, putting orders away, screening clients, managing staff, and monitoring purchases 
from internal and external vendors. See id. at 25. Plaintiff contends that, under SSR 82-61, the 
VE should have analyzed that work as a composite job to determine how it was actually 
performed. See id. 

 Finally, Plaintiff notes that, at the hearing, the ALJ recognized the possibility of a 
supplemental hearing or sending interrogatories to a VE. See id. (citing AR at 185). However, 
Plaintiff asserts, the ALJ chose not to do either, even though "without relevant vocational 
evidence there is no basis to determine whether the jobs of information clerk and service clerk 
require standing or walking in excess of 20 minutes at a time." See id. Without this 
information, Plaintiff contends that the ALJ and Appeals Council issued decisions that were 
unsupported by the evidence. See id. 
 "'While an expert is often called upon to explain the requirements of particular jobs 
. . . step four of the analysis does not require that an ALJ consult an expert.'" Rebecca H. v. 
Comm'r of Soc. Sec., No. 6:20-CV-01058 (TWD), 2022 WL 293854, *8 (N.D.N.Y. Feb. 1, 
2022) (Dancks, M.J.) (quoting Petrie, 412 F. App'x at 409; Hackett v. Comm'r of Soc. Sec., No. 
5:16-692, 2017 WL 1373893, at *6 (N.D.N.Y. Apr. 13, 2017) ([finding that] "[a]t step four of 
the disability analysis, the ALJ has the option to rely on [vocational expert] testimony")). 

Although vocational expert testimony is not necessary, given the Court's finding above and 
recommendation that the ALJ consult with a VE regarding accepted absenteeism and off-task 
behavior, the Court further concludes that the ALJ should question the VE about the expected 
amount of standing or walking required of an information clerk or service clerk both as a 
sedentary position as classified in the Dictionary of Occupational Titles and with an exertional 
level of light work as actually performed. See AR at 181-183. 

 IV. CONCLUSION 
 Having reviewed the entire record in this matter, the parties' submissions, and the 
applicable law, and for the above-stated reasons, the Court hereby 

 ORDERS that Plaintiff's motion for judgment on the pleadings, see Dkt. No. 18, is 
GRANTED; and the Court further 
 ORDERS that Defendant's motion for judgment on the pleadings, see Dkt. No. 23, is 
DENIED; and the Court further 
 ORDERS that the Commissioner's decision is REVERSED and this matter is 
REMANDED pursuant to sentence four of the Act to the Commissioner for further proceedings 
consistent with this Memorandum-Decision and Order; and the Court further 
 ORDERS that the Clerk of the Court shall enter judgment in favor of Plaintiff and close 
this case. 

IT IS SO ORDERED. 

Dated: June 23, 2022 Freder& k J “Boulhn Jr. 
 Syracuse, New York Senior United States District Judge 

 -25-